# Supreme Court of Judicature

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1893, IN THE SEVENTY-
EIGHTH YEAR OF THE STATE.

———————◆———————

No. 15,316.

THE OHIO AND MISSISSIPPI RAILWAY COMPANY *v.*
HEATON.

PLEADING.— *Complaint, Sufficiency of.—Railroad.— Defective Switch-
Lock.—Damages.*—In an action against a railroad company for dam-
ages sustained by reason of a defective switch-lock, causing a de-
railment of an engine and cars, the complaint is sufficient, which
alleges the duty of defendant in the premises, and also knowledge
of, and negligence concerning, the defective machinery, and plain-
tiff's freedom from contributory negligence; and the averment that
the lock was "old, worn out, out of repair, broken, and unsafe," is
sufficient to apprise defendant of the charge made as to its defective
condition.

INTERROGATORIES TO JURY.—*Answers to.— When General Verdict Will
Prevail.*—Where the answers to interrogatories, when construed to-
gether, are in harmony with the general verdict, and also with the
complaint and the instructions of the court, the general verdict must
stand.

INSTRUCTIONS TO JURY.—*Refusal to Give.— Given Substantially in An-
other Instruction.*—It is not error to refuse to give an instruction
which is covered substantially by another instruction given, and
which states the law on the subject more fully than the one refused.

EVIDENCE.—*Bodily Harm.—Pain and Suffering.—Physician.*—In an ac-
tion for damages by reason of bodily harm, the testimony of an
attending physician, as to the condition of plaintiff as ascertained

The Ohio and Mississippi Railway Company *v.* Heaton.

from an examination of him, and from expressions of pain made by plaintiff, is competent.

SAME.—*Same.—Attendants.—Degree of Injury.*—In such case, evidence as to the number of persons that waited on plaintiff, was competent as showing his condition and the degree of his injury.

JURISDICTION.—*Objection to, When Comes Too Late.*—Where a court assumes to act under lawful authority in a proceeding, an objection to its jurisdiction, made after trial, comes too late.

From the Washington Circuit Court.

*H. D. McMullen* and *H. R. McMullen*, for appellant.

*J. A. Zaring*, *M. B. Hottel*, *B. K. Elliott*, and *W. F. Elliott*, for appellee.

HOWARD, C. J.—The appellee filed his complaint against the appellant in the court below, claiming damages alleged to have been received by him while engaged as engineer on one of appellant's trains, by reason of the derailment of his train, due to a misplaced switch, caused by a defective switch-lock.

The appellant moved the court to require the appellee to make his complaint more specific in three respects, which motion was sustained as to the first two specifications, and overruled as to the third.

A demurrer to the complaint having then been overruled, the appellant answered in general denial.

The cause was tried by a jury, who returned a general verdict for the appellee, together with answers to certain interrogatories.

The appellant's motion for judgment on the answers to interrogatories, and also a motion for a new trial, were overruled.

Appellant thereupon objected to the jurisdiction of the court, by reason of an act of the General Assembly changing the times of holding said court. These objections were also overruled, and judgment was entered upon the verdict.

The errors assigned and discussed in this appeal relate—

1. To the sufficiency of the complaint, and the overruling of the demurrer thereto, and of the motion to make more specific.

2. To the overruling of the motion for judgment upon the answers to interrogatories.

3. To the overruling of the motion for a new trial.

4. To the overruling of the objections to the jurisdiction of the court.

As to the sufficiency of the complaint, our statute, section 338, R. S. 1881, requires that the complaint shall contain, amongst other things, "A statement of the facts constituting a cause of action, in plain and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended."

The complaint, so far as we need set it out, is as follows:

"That on the 3d day of September, 1887, plaintiff was a locomotive engineer, and was in the employ of the defendant in the capacity of a locomotive engineer, and had been in said employ for many years before that time, and on said day plaintiff was, as such engineer and in said employment, in charge of one of the defendant's locomotive engines, and was running it, with a freight train attached thereto, westward on said railroad through the county of Dearborn, in the State of Indiana; that at the city of Lawrenceburgh, in said county of Dearborn, there are switches and side tracks belonging to, and are a part of, said railroad; that in running said engine and train through to its destination, it was plaintiff's duty to keep on the main track of said railroad while passing through said city of Lawrenceburgh, and to not run said engine or train on any of said side tracks; that the switch target or sign indicated to plaintiff, when he was approaching said switch, that it was closed, and that he

could and would pass safely along said main track; that said target was placed on an upright column or metal post, and the target, by turning it in a horizontal way, and it stood partly turned, but so little turned around that plaintiff could not, and did not, see that it was so turned while he was approaching it; that said switch is only opened and closed by the use of a lever that is held in its place by a lock belonging to and on said apparatus that supports the target, and it is the duty of said defendant to keep said target and target apparatus and lock in good repair, and in a safe condition.

"But the defendant had carelessly and negligently and wrongfully failed and neglected to keep said lock in good repair and in a safe and sound condition, but, on the contrary, for more than one month prior thereto, the defendant had negligently and carelessly used and suffered to be used, a lock, for opening and closing said switch, that was old, worn out, out of repair, broken, and unsafe, and could not, and did not, hold said switch, and by reason of said condition of said lock, said switch-iron railing was partly displaced by the wheels of trains passing over it; that the defendant, on said 3d day of September, 1887, knew, and for more than one month prior thereto had known, of said unsafe and dangerous condition of said lock, but negligently, carelessly and wrongfully failed and neglected to repair it, or to place a good and sufficient one in its place; that on said 3d day of September, 1887, plaintiff was running said engine, with a freight train thereto attached, as aforesaid, in a careful and skillful manner, and without any negligence on his part, towards said switch, and towards said city of Lawrenceburgh, and was, at the time, in said county of Dearborn, in the State of Indiana, and when he approached said switch he looked at said switch target and saw that it was set so as to indicate that said

The Ohio and Mississippi Railway Company v. Heaton.

switch was closed, and that he could pass safely by the same and on and along said main line; that plaintiff was carefully and diligently watching said switch and target as he approached the same, and when he came to within twenty feet of said switch he, for the first time, discovered that it was partly open, and, to avoid danger, he instantly reversed said engine, and whistled the signal for down brakes, for the purpose of checking or stopping said engine and train, but before said efforts to check or stop said train could have any effect on the same, said engine had passed by said connecting point of said switch with the main track, and in passing said switch, by the insufficiency of said lock, as aforesaid, to hold the switch in its place, it gave way, and said switch was thrown open by the weight of said engine and by the wheels passing over it, and the engine and part of the freight cars of said train were, by reason of said defective and insufficient lock, derailed and thrown from said track, turned over and wrecked, and the plaintiff, without any fault or negligence or want of skill on his part, was caught in said wreck, and was thereby severely and dangerously injured, wounded, and bruised in his body and limbs, and was cut, bruised and lacerated on the left side of his head, extending from the temporal line to below the ear, and was also further cut, bruised and wounded, commencing at the middle of the ear and running down the cheek, and a large triangular piece of skin and flesh was cut and torn out, and left the bone exposed, and left a permanent impression and scar, and his hand and the fingers thereon were badly scalded, so that the abductor muscle had to be, and was, taken out, and cut off, and he was injured and wrenched in the spine, so as to produce partial paralysis, and his lungs were injured so as to produce permanent and injurious defects; that from said injuries he was made sick, sore,

and languished therefrom, and was permanently injured and crippled for all the days of his natural life, and is rendered incapable of earning a living for himself and family, and has lost all of his time from his said business of locomotive engineer from the time he received said injuries until now, and he was compelled to spend, and did spend, three hundred dollars for physician's and surgeon's service and medicine in trying to cure himself from said injuries; that plaintiff received said injuries while in the line of his employment aforesaid, and in 'the line of his duty in said employment without any fault, carelessness or negligence on his part, and he had no knowledge whatever of the dangerous and defective condition of said switch and lock before he received said injuries; that by reason of said wrongs and injuries aforesaid, plaintiff has been, and is, greatly damaged, etc."

The complaint alleges a state of facts that show that the appellee was free from contributory negligence. It is, besides, expressly averred that he was without fault or negligence, and that he had no knowledge of the defective condition of the switch and lock.

Counsel for appellant indulge in much verbal criticism of the complaint; but we think that the statutory requirements are substantially observed in its composition, and that it is a plain statement of the facts constituting the cause of action, and in such manner as to enable a person of common understanding to know what is intended.

The evident theory of the complaint is that the injury to appellee was caused by the defective lock. The use of the lock was to hold the lever in the slot on the target, and thus hold the rails of the switch in their place; but, by reason of its defective condition, the lock did not hold the lever in the slot, and did not, therefore, hold

The Ohio and Mississippi Railway Company *v.* Heaton.

the rails in their place, but allowed them to move and become displaced by the passage of trains over the track. Yet counsel find something absurd in the statement that "by the insufficiency of said lock, as aforesaid, to hold the switch in its place, it gave way, and said switch was thrown open by the weight of the engine and by the wheels passing over it."

A thin piece of steel, cut into a delicate key, may turn the bolt of a mammoth lock, which, in turn, shall hold the ponderous gate of a fortress. Small as the bit of steel is, it is yet the key to the fortress, and holds with ease what a thousand men could not maintain in position. So the lock in this case, as shown in the complaint, by holding the lever in its place upon the target, also holds the switch in position, and even guides the heavy trains upon the track. The lock, the lever, the target, the switch, are all parts of one apparatus, each necessary for the stability of the whole. By the defect in the lock the whole machinery became dangerous, even as one faulty link weakens the entire chain.

The motion to make the complaint more specific was rightly overruled. If there is any fault in the complaint, it is that the allegations are more full and detailed than necessary. A complaint should state neither conclusions of law nor evidence, but "the facts" "in plain and concise language," as the statute has it. To say of the lock that it was "old, worn out, out of repair, broken, and unsafe," was certainly sufficient, and even more than sufficient, to apprise the appellant of the charge made as to its defective condition.

The duty of the appellant in the premises is fully averred, and knowledge of, and negligence concerning, the defective machinery alleged. We conclude that the complaint is not subject to the criticisms urged against it.

It is next contended that the appellant should have

The Ohio and Mississippi Railway Company *v.* Heaton.

had judgment upon the answers to interrogatories, for the reason that the jury were instructed by the court that if they found certain facts their verdict should be for the appellant; that they found the facts, and yet found a verdict for the appellee.

It is well settled that special findings are to be construed together; that one of a series can not be singled out to overthrow the general verdict; that where the interrogatories are inconsistent with one another the general verdict will stand; that all presumptions and intendments will be made in favor of the general verdict, and nothing in favor of the answers to interrogatories; and that the general verdict will stand if the answers to the interrogatories can be reconciled with it on any reasonable hypothesis.

The answers to interrogatories propounded by appellant show:

1. That when the engine upon which appellant was, at the time of the accident, came within twenty feet of the switch the switch was partly open.

2. That the lever with which the switch is thrown open and closed was, at that time, out of the slot or notch on the target.

3. That the switch could not be partly open unless the lever was out of the slot.

4. That if the lever was out of the slot and the switch partly open when the engine came upon it, the weakness or strength of the lock could have nothing to do with holding the switch in place.

5. That just before and at the time the engine came upon the switch rails the lock was on the switch stand, hanging by a chain, not in the lever.

6. That if the switch was closed and the lever put into the slot without any lock on it, the lever would not hold

the switch in its place, even if not removed by some person.

7. That if the switch was closed and the lever put into the slot without any lock on it, the passing of trains would so jostle and jar the lever as to run it up out of the slot and move it around so that it would rest on some other part of the switch stand.

8. That at the time of the accident there was no force or strain upon the lock caused by the passage of the engine over the switch rails.

9. That the last train in the switch on the day of the accident was the local freight on which Meyers and Newton were brakemen.

10. That the brakeman Newton closed the switch at the time referred to, and left it unlocked.

11. That the lock was out of repair, wornout, defective on the inside.

12. That the appellant knew that the lock was out of repair before the accident occurred; that appellant's track walker and road master knew of the lock's being out of repair; that time gave them the knowledge.

13. That after appellee came within half a mile of the target, he looked at the target to see whether it indicated that the switch was in the proper position for him to pass in safety.

It appears to us that these answers, when construed as a whole; as they must be, are in harmony with the general verdict, and also with the theory of the complaint and the instructions of the court.

Counsel seize upon one of the instructions of the court and one of the answers to the interrogatories, and contend that on the theory of the complaint, as shown in the instruction selected, the appellant should have had judgment on the answer selected. This would, indeed, be an extreme use to make of instructions and inter-

rogatories in order to arrive at an overthrow of a general verdict; in effect, taking the intendments in favor of the special finding and against the general verdict, while all the remaining special answers and all the remaining instructions are disregarded.

But though there were twenty-nine other instructions covering different phases of the case, and fifteen other answers giving facts relating to various hypotheses, yet, even considering only the instruction and the answer selected for consideration, we are of opinion that they may be fairly reconciled with the theory of the complaint and with the general verdict.

The instruction referred to, so far as necessary to set out, was: "If you find that at the time when the engine reached the switch the lever was out of the slot and the switch partly turned, and if you further find that when the lever was out of the slot, the presence or absence of the lock could not affect the moving of the switch, your verdict must be for the defendant."

This instruction evidently refers to the whole case, and means that if the lever was out of the slot, and the lock had nothing to do with its being in or out of the slot, in other words, if some agency or means other than the defective condition of the lock had caused the misplacement of the switch then there could be no recovery. This was reasonable, and in perfect harmony with other instructions given by the court, to the effect that the appellee could recover only on the theory of his complaint, which was that the switch became open by the failure of the defective lock to keep the lever in the slot.

The interrogatory prepared by appellant, however, expressly confined the answer of the jury to the condition of the lock at the moment the engine was upon the switch; and as the lock had then been jostled out of the slot and was hanging loose upon the target, it is clear

enough that the lock at that time could have nothing to do with holding the switch in place; the defective lock had already done its work, and the jury, of necessity, so found.

But the jury also found that the lever would not hold the switch in place without the lock; that if the lever was put into the slot, without any lock on it, the passing trains would jostle and jar the lever out of the slot. And they found further that the brakeman Newton had closed the switch after the local freight had passed out, and before the accident, but that he left it unlocked, the lock being out of repair and worn out.

The testimony of Newton on this point is that he opened the switch for his train to pass out and then closed it. He says he found the lock in the lever and put it back in the lever when he closed the switch; that he tried to lock it, but could not do anything with the lock but to close it; it was a spring lock; he pushed it in, but it would not lock, and he left it the way he found it.

Under the rules for construing special findings in connection with a general verdict, we must hold that the court did not err in overruling appellant's motion for judgment upon the answers to interrogatories.

We have carefully considered what counsel for appellant say in favor of a new trial by reason of a failure of evidence to support the verdict; but there is certainly evidence within the issues upon which the jury might have based their verdict.

Counsel also argue that a new trial should be granted, for the reason that the verdict is contrary to law, inasmuch as it is contrary to the instructions of the court. Whether a verdict contrary to the instructions of the court is a verdict contrary to law we need not decide, since, from what we have said in considering the ruling of the court on the motion for judgment on the answers

to interrogatories, it is very clear that the verdict was not contrary to the instructions of the court.

Appellant gives as another reason for a new trial that the court refused an instruction which stated that in order to entitle appellee to recover he must not only prove that the lock was out of order, and that the fact of its being out of order caused the injury, "but must further prove that defendant actually knew of such condition, and having such knowledge continued to use the lock; for the allegation that the defendant knew of the condition of the lock is material, and if it is not proved your verdict must be for the defendant."

We think that this instruction fails of stating the law fully on this subject, and that the instruction given by the court was the correct one, namely: "In order to recover in this action, the plaintiff must not only prove that the said lock was out of order, as aforesaid, and that it was useful and necessary upon said switch to make said switch safe, and that the fact of its being out of order caused the injury, but must also show, by a fair preponderance of the evidence, that the defendant actually knew of the condition of such lock, or, by the exercise of ordinary prudence and care, might have known that said lock was out of order, defective, and not sufficient for the purposes for which it was made."

In *Ohio, etc., R. W. Co.* v. *Pearcy, Admx.*, 128 Ind. 197, it was said, that "The duty on behalf of the employer does not end with simply providing safe machinery and appliances for the use of his employes, but the further duty is imposed of continuously exercising reasonable diligence and care to ascertain and know the condition of such machinery and appliances, and to keep them in a proper and safe condition." See, also, *Louisville, etc., R. R. Co.* v. *Utz, Admr.*, 133 Ind. 265.

The complaint had alleged that at the time of the ac-

The Ohio and Mississippi Railway Company v. Heaton.

cident the appellant "knew, and for more than one month prior thereto had known, of said unsafe and dangerous condition of said lock." Also, that "the defendant had carelessly and negligently and wrongfully failed and neglected to keep said lock in good repair and in a safe and sound condition, but, on the contrary, for more than one month prior thereto, the defendant had negligently and carelessly used, and suffered to be used, a lock for opening and closing said switch that was old, worn out, out of repair, and unsafe."

The instruction of the court as to knowledge of appellant was in harmony with the complaint.

Something is said by counsel, as to the liability of Newton, a coemploye. We think that the findings of the jury in answer to interrogatories, and also the evidence of Newton himself, show very clearly that he was not in fault. Newton did not leave the switch unlocked for any reason, but that on account of the defective condition of the lock he could not lock it.

Dr. Tucker testified as to the condition of appellee from an examination of him, and from expressions of pain made by appellee. Such evidence is proper for the jury, who will judge of its credibility. *Board, etc.*, v. *Leggett*, 115 Ind. 544; *Chicago, etc., R. R. Co.* v. *Spilker*, 134 Ind. 380, and authorities there cited.

The evidence of appellee's wife, as to the number of persons that waited on him, was competent as showing his condition and the degree of his injury. Its weight was for the jury.

Other evidence was also objected to; but we think the court exercised proper discretion in admitting it.

Appellant also calls attention to alleged misconduct of attorneys in their remarks to the jury. We think that under the admonitions of the court made at the time, any impropriety of this character was rendered harmless.

The attorneys yielded, in each case, to the admonitions of the court.

The appellant has assigned it as error that after the trial, and before the rendering of judgment, the court overruled his protest against the rendering of judgment upon the verdict for the alleged reason that the court had not jurisdiction. Want of jurisdiction is claimed because, after the beginning of the term of court at which the case was tried, being the February term, 1889, the General Assembly had enacted a law repealing the law under which said term was held.

We think this protest, even if otherwise well made, came too late. Appellant had submitted to the jurisdiction of the court, and gone to trial without objection, took the chances of winning the suit, and, after losing, then, for the first time, objected to the jurisdiction of the court, thus saying, in effect: There is jurisdiction if I win, but not if I lose. *Louisville, etc., R. W. Co.* v. *Power*, 119 Ind. 269.

In the next place, the question is not properly before us, as the protest is not in the bill of exceptions.

But if the objection to the jurisdiction were well taken, and were before us for decision, we should be compelled to decide against the contention of appellant, for at least two reasons. The act concerning the Forty-Second Judicial Circuit, comprising the counties of Jackson, Washington and Orange, approved March 6, 1889, left Washington with a February term, just as it had been before, so that, either under the old or under the new law, this trial was had during the February term. Besides, it is clear from the wording of the act, that the change proposed was made in the terms to come, and not in the present term or in past terms. The act was approved March 6, and names the new terms in Jackson as beginning in April, August, November, and January,

to last four weeks each; and those in Washington to begin on the Mondays following the terms in Jackson, also to last four weeks each. There can be no doubt that it was not the legislative intent, in passing this act, to disorganize any court, or to interfere with pending proceedings therein by giving the act a retrospective effect. An act will never be construed as retrospective if any other reasonable interpretation can be given to it. In any event, the court assumed to act under lawful authority, and an objection to its jurisdiction, made after trial, comes too late. *Smurr* v. *State*, 105 Ind. 125.

We find no available error in the record.

The judgment is affirmed.

Filed Nov. 28, 1893; Petition for rehearing overruled Feb. 15, 1894.