Dissenting Opinion.
Ross, J.
The material question presented by the record in this case is whether or not the appellants are answerable to the appellee for an injury received by him while in their employ resulting from the negligence of a coemploye.
It appears to the writer that the opinion adopted by the majority, while announcing many well settled legal principles, is plainly a deviation therefrom.
The theory of the complaint under consideration is, as the majority opinion states, to recover for an injury sustained by reason of the appellant’s making appellee’s working place unsafe. Upon this theory is its sufficiency considered by the court, and upon the same theory will I give my views as to its sufficiency.
It is conceded, by the facts alleged in the complaint, that the appellee was employed to work in a factory in *65 which there were other persons and several machines employed, the work specially assigned to appellee being to operate an auger and bore holes in the tubing, which he afterwards piled on end, inclined from him, on a frame near his machine; that back of this frame, where he piled the tubing, stood another machine used by appellants in the operation of their business, but between which and the piled tubing the place for the person operating the machine was so narrow that he was liable to strike the tubing and cause it to fall over on the appellee; that when no one was operating that machine or in the space between it and the tubing, there was comparatively no danger of the tubing falling on appellee. At the time appellee was injured, the appellant’s foreman ordered another of appellant’s servants to go into this space between the tubing and the machine to do some work, the foreman accompanying him, and that they, on account of the limited space, came in contact with the pieces of tubing so placed on end, causing it to fall, etc.
In the opinion of the majority, it is said: “It is charged that he (Crawley, appellant’s foreman) ordered and directed another employe to enter a certain place and do work therein, and that he also entered such place for such purpose. In doing these things he was performing the master’s duty, and in that respect he was not a fellow-servant with the employe. The execution of the master’s order, in conjunction with the manual acts of Crawley and Eller, rendered the place in which appellee was working dangerous, and injury actually befell him. Here was a violation of the master’s duty which he owed to appellee, to keep the place in which he worked reasonably safe.”
And again: “We have reached the conclusion that at the time Crawley gave the order and direction and fixed *66 the place in which he and Eller should work, he stood in the relation of master to the appellee.”
And, also, “The immediate cause of the injury was the falling of the pieces of tubing on appellee’s back; such fall was caused by the persons at work in the narnow space coming in contact with them; the cause of the persons being engaged at work in that place was the order and disposition of Crawley. All of these things, taken together, rendered the place in which appellee was at work dangerous, and the master violated his duty in failing to keep appellee’s working place reasonably safe.”
The vital question to be determined from the facts alleged in the complaint are whether or not Crawley (appellant’s foreman) was, at the time complained of, a vice-principal or a fellow-servant with the appellee, and whether he violated any duty owing from the appellant to the appellee.
“All servants in the employ of the same master, subject to the same general control, paid from a common fund, and engaged in promoting or accomplishing the same common object, are to be held fellow-servants in a common employment.” Beach Cont. Neg., section. 332.
“All who serve the same master, work under the same control, derive authority and compensation from the same common source, are engaged in the same general business, though it may be in different grades or departments of it, are fellow-servants, who take the risk of each other’s negligence.” Thompson’s Neg., 1026, section 31.
Judge Cooley states that “persons are fellow-servants when they engage in the same common pursuit under the same general control.” Cooley on Torts, p. 541, note 1.
*67 These general definitions are not sufficiently clear that they may be applied to every state of facts, and the relative position of the parties determined. While all engaged in a common service, strictly speaking, may be fellow-servants, yet the master may delegate one with power and authority for the performance of duties which rest solely upon the master, and when so clothed and while in the performance and to the extent of such duties the servant acts instead of the master. A foreman or superintendent is prima facie a fellow-servant with those under him, and it is not sufficient simply to charge him with being such foreman or superintendent with power to hire and discharge those under him and to direct the manner of carrying on the master’s work, to make him a vice-principal, but the facts alleged must show that he was in the discharge of a duty owing from the master to the servants. Flynn v. Salem, 134 Mass. 351.
A vice-principal is one whom the master has clothed with power to act in his stead in the performance of a duty owing from the master to his servant. ■ And for all his acts or omissions in respect of the matters in which he acts in place of the master in performing the master’s duty, the master is liable. Simply because one servant is superior in grade, rank or authority, does not make him any more the representative of the master than those lower in position. It is not grade or position that determines whether a servant is acting for and instead of the master, but the duty he is performing.
“The truth is, the various employes of one of these large corporations are not graded like steps in a staircase, those on each step being as to those on the step below in the relation of masters, and not fellow-servants, and only those on the same steps fellow-servants, because not subject to any control by one over the other. Prima facie, all who enter into the employ of a single *68 master are engaged in a common service, and are fellow-servants, and some other line of demarkation than that of control must exist to destroy the relation of fellow-servants.” Baltimore, etc., R. W. Co. v. Baugh, (U. S.) 54 Am. and Eng. R. R. Cases, 328.
In this case the Supreme Court of the United States have announced the correct principle, namely, that the master’s liability for an injury to one servant caused by the negligence of another servant is not to be determined from the grade or authority of the negligent servant, but rather- by what duty of the master, the performance of which had been delegated to the negligent servant, was neglected, resulting in injury. New Pittsburgh Coal and Coke Co. v. Peterson, 136 Ind. 398.
In the case of Justice v. Pennsylvania Co., 130 Ind. 321, the same principles were announced by our Supreme Court, Coffey, J., speaking for the court, saying: “If, at the time the offending servant performed the act by which another servant was injured, he was in the performance of a duty which the máster owed to his servants, he was not a fellow-servant, for the rule is fundamental that the master can not rid himself of the duty he owes to his servants by delegating his authority to another, and if he attempts to do so, the person to whom he delegates the power to act is a vice-principal, and not a fellow-servant. * * * On the other hand, if at the time of the alleged negligence the serv= ant was not engaged in the performance of a duty which the master owed to his servants, but was in the discharge-of a duty which the servant acting owed to the master, he will be held to be a fellow-servant with others engaged in the same common business, and the master will not be liable for any injury inflicted upon such fellow-servant by reason of his negligence.”
This is the general rule followed by all courts with *69 few exceptions. That there are occasional deviations in the application of the rule I am free to admit, but the rule itself stands unchanged.
My associate who wrote the prevailing opinion in the final summing up seems to have entirely overlooked this rule, and while not directly renouncing it in fact, as appears from the conclusion reached, he bases his opinion upon the relative position of the parties.
In the first paragraph of the complaint it is alleged that Crawley, “the said agent and foreman, negligently and carelessly went in behind and negligently and carelessly, at the same time, ordered, directed and procured another employe of defendant to go in behind and on the north side” of said pieces of tubing and to perform some special work, and in attempting to perform the work came in contact with the tubing. Applying the test to the facts alleged, what duty did the appellants neglect? Did they agree that the other machinery in their factory should remain idle or that none of their servants should work in the immediate vicinity of the appellee while he was working? Did appellants guarantee the appellee from all risk of injury resulting from the acts of their other servants while in the performance of their duties in operating the other machinery? The fallacy of such an assumption is apparent. In what particular then can it be said the appellants were negligent? Were the appellants negligent in ordering the other servant to go behind the tubing to perform this special work? Unless it can be said that the appellants agreed. with the appellee that they would not put any person to work there they were not negligent in ordering a servant to go there to work.
Was Crawley negligent in going behind the tubing? In going behind the tubing he went for the purpose of assisting in the performance of a duty owing from him *70 as a servant to his master, hence he was not acting in the place of the master, but was acting as a servant of the appellants.
Was Crawley negligent in going behind the tubing to do this special work for the appellant? If that was the place where the work was to be performed, and Crawley was to do it or assist in its being done, he had a right to go there for that purpose and in so doing was nothing more than a servant of the appellants.
It is not alleged in the complaint either that appellants were not in the habit of using this space in the manner and for the purpose alleged, or that the appellee was ignorant of its use. The prosumption is that he knew it was so used and that he understood the nature and hazard of his employment, when it was so used, at the time he engaged in appellants’ service. It devolved upon the appellee by his allegations to show such a state of facts as would warrant the court in holding that the risk was not one naturally incident to the service. If he knew of the danger, and the presumption is that he had such knowledge unless specially denied, it was an incident to his service and he assumed it. The allegation in the complaint that he had no knowledge that Crawley and Eller were behind the tubing does not rebut the presumption that he knew that the machine back of the tubing was used and that persons operating it were compelled to go behind the tubing for that purpose. The legal presumptions are that the appellee either knew these facts when he entered appellants’ employ and contracted with reference thereto, or that he afterwards acquired such knowledge and by continuing in their employ assumed the risk. Negligence is never presumed, hence it was necessary for the appellee to allege and prove such a state of facts as would show the appellants to have been remiss in the performance of some duty *71 owing from them to him. The negligence of the appellants, if any is charged, was not in the manner in which they directed their servants to do this special work, but in doing the work at all. The pleading does not pretend to proceed upon the theory that the appellants ordered their servants to do the work in an unusual or improper manner, but that it was negligence to order them to do it at all, because in its execution the safety of the appellee was endangered. Had the facts alleged shown that in the performance of this work by appellants’ servants the appellee was exposed toan unknown danger, the case would be a very different one, but such is not this case. In order to make the complaint good, it was necessary for the appellee to have alleged want of knowledge on his part, of the danger. Pittsburgh, etc., R. W. Co. v. Adams, 105 Ind. 151; Indianapolis, etc., R. W. Co. v. Dailey, 110 Ind. 75; Louisville, etc., R. W. Co. v. Corps, 124 Ind. 427; Matchett v. Cincinnati, etc., R. W. Co., 132 Ind. 334; Evansville, etc., R. R. Co. v. Duel, 134 Ind. 156; Pennsylvania Co. v. Congdon, 134 Ind. 226.
It is not alleged that the appellants knew or that the appellee did not know that it was dangerous for persons to work behind the tubing when piled up in the manner alleged. The allegation in the complaint is that Crawley, the foreman, and Eller, the workman, were behind the tubing unknown to the appellee. Such an allegation will not take the place of an averment that the appellee had no knowledge of the dangerous condition of the working place. If the appellee accepted service knowing the position and condition of the machinery and working place, he assumed all apparent risks. That he did know of the apparent risks, and contracted accordingly, the law presumes.
‘ 'Knowledge on the part of the employer, and ignorance on the part of the employe, are of the essence of the *72 action; or, in other words, the master must be at fault and know it, and the servant must be free from fault, and ignorant of his master’s fault, if the action is to lie.” Beach Cont. Neg. (ed. 1885), p. 350, section 123; Ohio, etc., R. W. Co. v. Heaton, 137 Ind. 1.
Unless these facts are alleged in the complaint it is insufficient on demurrer.
Once again we recur to the theory of the complaint, and inquire, what duty did the appellants violate? Did they furnish appellee with an unsafe working place? No, because it is not alleged that it was unsafe. Neither is it alleged that the appellants knew it was unsafe, or that the appellee did not know that it was unsafe.
It is evident, therefore, that we are not mistaken in our conclusion as to the theory of the complaint, and as already stated, upon that theory it does not state a cause of action. To the writer it seems clear that the opinion adopted by the majority is in direct conflict with the last expressions of the Supreme Court as contained in the many cases cited in the majority, and this dissenting, opinion.
The judgment ought to be reversed, with instructions to sustain the demurrer to each paragraph of the complaint.
Filed March 29, 1894.