THE MISSOURI PACIFIC RAILWAY COMPANY v. WILLIAM H. HOLLEY.

1. JURY; *Special Findings; Duty of the Court.* While, under the law as it now stands, it is the duty of the court, at the request of either party, to direct the jury to find upon particular questions of fact stated in writing by such party, yet such duty does not make the court a mere mouthpiece of either party, to submit any questions presented. It is the duty of the court to revise the questions presented, striking out all which are mere repetitions, or touch immaterial facts, and changing and arranging the others so that, in a natural order, clearly and briefly, are presented the questions which are necessary to bring out any particular fact or facts desired.

2. SUPREME COURT— *Treatment of Verdict and Special Findings.* The general verdict will stand, unless the facts as stated in the special findings are inconsistent therewith; and where a mass of questions is presented and the answers thereto are to some extent apparently inconsistent and contradictory, this court will not strain a point to harmonize those answers and frame a theory upon which the answers can be pronounced as a whole inconsistent with the general verdict, but will uphold the general verdict unless the facts as obviously disclosed by the answers to the special questions are inconsistent therewith and compel a different judgment, or unless the answers are so directly and plainly contradictory as to show that the jury gave no intelligent attention to either the testimony or the questions, or unless some special facts appear to show that there has been a mistrial or a failure of justice.

3. CONTRIBUTORY NEGLIGENCE, *Not Positively Shown by Jury's Answers.* In an action by an employé of a railroad company for damages for personal injuries, a general verdict was returned for plaintiff. In addition, some twenty-nine questions were submitted by plaintiff and one hundred and thirty-four by defendant. The answers thereto clearly showed negligence on the part of the railroad company. Some of them tended to prove contributory negligence on the part of the plaintiff, and others tended to show that his conduct was prudent and free from negligence. The trial court sustained the general verdict, and entered judgment thereon. The record brought to this court contains only the pleadings, the verdict, questions and answers, and the judgment. *Held,* That notwithstanding the doubt thrown by many of the answers as to the prudent and proper conduct of the plaintiff, it cannot be adjudged that the answers taken as a whole affirmatively and positively show contributory negligence on his part, and therefore they are not so inconsistent with the general verdict as to justify this court in setting aside the judgment and directing a judgment for defendant.

30 — 30 KAS.

*Error from Atchison District Court.*

ACTION by *Holley* against the *Railway Company*, to recover damages for bodily injuries. Trial at the November Term, 1882. The jury rendered a verdict for the plaintiff for $2,750. The jury also returned answers to particular questions of fact submitted by each party. The defendant moved the court to set aside the following findings of fact, submitted on behalf of plaintiff:

"For the reason that the same are not sustained by the evidence, and are each against the weight of the evidence, viz.: Nos. 9, 12, 15, 20, 21, 22, and 25; and also the following findings of fact, submitted on behalf of defendant, as not being sustained by sufficient evidence, and as being against the weight of the evidence, viz.: Nos. 40, 51, 113, 121, 125, 128, and because each of said findings of fact is contrary to the instructions of the court."

The court overruled this motion as to each of the foregoing findings — the defendant duly excepting. Thereupon the defendant moved the court for judgment in its favor on the special findings of fact herein, notwithstanding the general verdict, for the following reasons, to wit:

"1. Said findings of fact are inconsistent with and do not sustain the general verdict of the jury.

"2. The findings of fact show that neither the defendant nor any of its employés were guilty of any negligence that contributed to the injury of plaintiff, as alleged in plaintiff's amended petition.

"3. The findings of fact show that plaintiff was guilty of negligence which contributed directly to the injury complained of.

"4. The findings of fact show that plaintiff did not use reasonable and ordinary care to prevent the injury complained of.

"5. The findings of fact show that plaintiff is not entitled to recover herein, notwithstanding the general verdict of the jury.

"6. On the findings of fact, notwithstanding the general verdict of the jury, the defendant is entitled to judgment."

The court overruled this motion — the defendant except-

ing. Thereupon the defendant filed its motion for a new trial, which the court overruled — the defendant excepting. Then the court entered judgment for the amount of the verdict in favor of plaintiff and against the defendant company, which brings the case to this court. The facts appear in the opinion.

*Everest & Waggener*, for plaintiff in error.

*W. W. Guthrie*, and *H. M. Jackson*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: The plaintiff was a brakeman in the employ of defendant. While so employed, and endeavoring to prepare for a coupling between two cars, he received personal injuries, for which he brought this action. The case was tried by a jury. The verdict and judgment were for the plaintiff, and defendant alleges error. The testimony was not preserved, so that the case comes before us upon the pleadings, the answers to particular questions, the general verdict, and the judgment. The questions presented arrange themselves under two classes: First, do the answers to the questions show that the defendant was not guilty of the specific acts of negligence alleged in the petition? Second, are they so inconsistent with the general verdict as to overthrow it?

Perhaps a general statement of the circumstances attending the injury will help to a solution of the questions involved. The plaintiff was acting as brakeman on a passenger train, consisting of engine and tender, baggage car, and two coaches. This train ran eastward until it reached the Republican river, and there discharged its passengers. It then backed westward two miles to Ames station, where was a switch and side track, at which place the position of the coaches and baggage car was to be changed, and the train made up for moving westward in the morning. The front coach and the baggage car had a Miller coupling, while the rear coach had a link-and-pin coupling. The crew consisted of the engineer

and fireman, the conductor, one Gould, the baggageman and front brakeman, and the plaintiff as rear brakeman. Gould was incompetent; the others competent and careful. In making up the train, the baggage car was first uncoupled and thrown upon the side track; then the two passenger coaches were uncoupled — the front one pulled forward by the engine on the main track, and then backed down on the side track for the purpose of coupling with the baggage car. This coach and the baggage car had Miller couplings, and would ordinarily couple when coming together without any assistance on the part of a brakeman; but the link and pin which had been used in coupling this coach with the other were left in it when uncoupled from the other, and as it came near the baggage car, they had to be removed in order to permit the coupling. Plaintiff stepped in between this coach and the baggage car for the purpose of removing the link and pin, and while so doing was caught between them, and crushed. This took place in the evening, after dark, and when signals were given by lanterns.

Plaintiff charged negligence in these ways: that he, having charge of the coupling, signaled the engineer to stop; that the engineer obeyed the signal, and stopped; that after stopping he went to remove the link and pin, and that while so doing, the engineer, without any signal from him, started his engine, backed the coach against the car, and crushed him; that thus the injury resulted from the negligence of the engineer in starting his engine without waiting a signal from plaintiff. He also charged that Gould, the baggageman and front brakeman, stood on the front end of the passenger coach, instead of the rear and coupling end as it was his duty to do, and from the front end of this coach negligently signaled the engineer to back up, and in pursuance thereof the engineer backed, causing the injury complained of.

Negligence on the part of two employés was therefore charged: first, negligence in the engineer in not obeying plaintiff's signals; and second, negligence on the part of Gould in giving improper signals. It would seem from

the answers, that the first imputation of negligence was not proved; that the engineer did not see plaintiff's signals and did not act upon them; that he obeyed the signals of Gould, and that it was right for him so to do. Two things prevented the engineer from seing plaintiff's signals: first, the switch was on a curve, and the plaintiff was on the outer side of this curve; and second, there was a corn-crib so situated as to cut off the vision of the engineer. But negligence on the part of Gould is clearly shown. He was on the east end of the coach, instead of the west and coupling end. It was his duty, if he attempted to control the coupling, to be on the coupling end. Counsel argue that he was unaware of plaintiff's presence and danger, and therefore owed him no duty; but if he had been in the place he ought to have been, he would have known of plaintiff's presence and of the work he was attempting, and would have governed his signals accordingly. So that his failure to be at the place of duty was the cause of the improper signals and the injury which followed. We think it clear that the answers show affirmatively negligence on the part of Gould — negligence causing the injury. Thus in this respect they are not inconsistent with the general verdict; on the contrary, they affirmatively support it. Neither do they present any such departure from the facts alleged in the petition, as would justify us in disturbing the judgment.

Thus far our conclusions have been reached with little embarrassment. But whether the answers do not show contributory negligence on the part of plaintiff, and thus antagonize and overthrow the general verdict, is a matter of gravest doubt. There are certainly some answers which, taken by themselves, tend very strongly to show contributory negligence, while there are other answers which also tend strongly to show that the plaintiff acted with ordinary prudence.

We quote the following questions and answers for the sake of illustration — the first two propounded by plaintiff, and the others by defendant:

"26. Was the plaintiff at said time engaged in the line of his duty as brakeman on defendant's said train, in the cus-

tomary and ordinary manner for the performance of such duties under the circumstances then existing? A. Yes.

"27. Was the plaintiff at the said time undertaking to perform his duty as defendant's brakeman in the usual and ordinary manner under the circumstances then existing? A. Yes.

"37. Is it usual, customary, or safe for a brakeman to go in between two coaches about to be coupled together with Miller couplings? A. No.

"56. Is it dangerous and reckless for a person to go in between two cars having Miller couplings that are to be coupled together? A. Yes.

"57. Did the plaintiff then know that it was dangerous and reckless for a person to go in between two cars having Miller couplings when about to be coupled together? A. Yes.

"73. At said time did said plaintiff know that it was not usual and customary for a brakeman to go in between two cars about to be coupled together with Miller couplings? A. Yes.

"74. Did he know at said time that a brakeman was not expected or required under any circumstances to go in between two cars having Miller couplings as they were coming together for the purpose of being coupled? A. Yes.

"92. Was said moving coach proceeding at a slow rate of speed, not exceeding two miles per hour, and sufficiently slow to permit said Holley to step on the steps of said car at the rear end thereof, and when it arrived near to where said mail-and-baggage car was standing, for him to bend down on said platform so that he could reach said link and pin with his hand? A. Yes.

"127. At said time could not plaintiff easily have stepped up onto the platform of said moving coach and thus avoid any risk or danger to himself? A. Yes.

"90. Could plaintiff, with perfect safety to himself and in the discharge of his duties as brakeman, properly have gone onto the rear platform of the moving coach instead of between said mail car and said moving coach? A. Yes.

"72. After said plaintiff claims to have given the signal to the engineer to stop, ought he, in the exercise of reasonable and ordinary care, under any circumstances, to have gone in between said mail-and-baggage car and said coach until he knew that said engineer had seen such signal and knew for what purpose it was given? A. No."

Now it would seem, from the answers to the first two questions, that plaintiff acted in the ordinary and usual manner, and as required of him by the circumstances then existing; while the inference from the answers to the other questions is, that under no circumstances ought he to have gone between the coach and car, but rather should have stepped on the platform of the coach, and from it reached forward and removed the link and pin.

We think it would be difficult, if not impossible, to fully harmonize these various answers. It may be said, as a possible explanation of the answer to the last question, that as appears from other answers, after plaintiff had signaled, the coach apparently stopped, and that such apparent stop was evidence to him that the engineer had seen and was obeying his signal. And in reference to some of the other answers, it may be that the jury thought only of the coming together of two coaches with the Miller couplings, and when in neither was there link or pin or anything to prevent them coupling themselves. And yet such explanation is not satisfactory as to some of the answers, as for instance that to question No. 74.

Now under these circumstances, what is the duty of this court? The trial court has sustained the general verdict, thereby affirming that the answers are not in its judgment inconsistent therewith. It heard the testimony, the arguments of counsel, perceived the drift of the trial, and understood better than we can the import of the questions and answers. From the whole scope of the trial, it knew, as we cannot, how the jury understood the questions, and the full intent and meaning of their answers. It will be borne in mind that the answers are not directly contradictory; that is, there is no direct affirmation in one answer, with as direct a negation in another. They are inconsistent and contradictory, only in the sense that their tendency and import seem to be in opposite directions. We all know how the same language often conveys different meanings to different minds, and how

the intended meaning is determined by the peculiar facts upon which the language is based or to which it refers.

With these general observations, we remark that we ought to sustain the verdict if it can be fairly done, and ought not to strain a point to harmonize the various answers for the sake of making them as a whole inconsistent with the verdict. Doubtless cases may arise, as that of *The Railroad Co. v. Maher*, 23 Kas. 163, in which it appears not only that the answers are inconsistent, but also that the jury evidently misconstrued some writing, or misconceived the force of some testimony, in which it would be our duty to set aside the verdict. So also other cases may be found, like that of *Shoemaker v. Railway Co.*, ante, p. 359, in which the answers are so directly contradictory or so confusing as to indicate that the jury gave no intelligent attention to the testimony or the questions, and in all such cases a new trial should be granted. But this case is entirely different. Evidently the jury made an honest effort to understand the case, and attempted full and honest answers to the questions. We cannot see that they misconceived the import of any testimony, and the answers do not, as a whole, so plainly and directly disclose a state of facts inconsistent with the verdict as to justify us in disregarding it.

Before closing this opinion we may remark that one cause of the inconsistencies between the answers is, the multitude of questions and the manner in which they are presented. On the part of the plaintiff some twenty-nine questions were propounded, and on the part of the defendant one hundred and thirty-four. These were not arranged in any natural order, but jump abruptly from one matter to another — often refer to trivial and unimportant things, and seem more like the cross-examination of a witness than the submission of questions to a jury. Now this matter of submitting particular questions to a jury is a valuable right to a party, and subserves an important part in the elucidation of the truth, and the proper application of the law to the facts; but when

abused, as it may be, it will be apt to perplex and embarrass a jury, and hinder rather than help right and justice. We have referred to this matter in, among others, the cases of *The Bank v. Peck*, 8 Kas. 660; and *Wyandotte v. White*, 13 Kas. 191. Referring to the matter again, we may say that it is the right of a party to have the jury find upon particular questions of fact submitted to them, and that it is error for the court to deny a party this right. But it does not follow from this that it is the duty of the court to submit every question presented. The court is not a mere mouthpiece through which the party interrogates the jury. The jury is not, as it were, placed on the witness stand to be cross-examined by counsel. It is the duty of the court to supervise the questions presented — to select the most important, and arrange them in a clear and natural manner. Thus a symmetry and order will be preserved which will tend to secure truth and justice. The case will go clearly to the jury, and the answers will be more apt to be harmonious and consistent. Of course the object is to get at the facts, and the more clearly and orderly the matters are presented, the more certainly will the facts be ascertained. And over this, as of other matters, the court must exercise a supervision. We do not mean that the court is called upon to write out questions, or that it should be particular and precise about the phraseology of counsel, for it is the party and not the court that is seeking answers as to particular facts; but only this, that the court should require the parties to present an orderly arrangement of questions, should strike out the trifling and unimportant, and should not permit the jury to be confused and the case lumbered up with useless matter. But it is unnecessary to pursue this line of thought further. For the reasons heretofore indicated, we are not satisfied that the answers, taken as a whole, can be pronounced inconsistent with the verdict, and therefore the judgment will be affirmed.

All the Justices concurring.