Bechdolt v. The Grand Rapids and Indiana Railroad Company.

No. 13,041.

## BECHDOLT v. THE GRAND RAPIDS AND INDIANA RAILROAD COMPANY.

RAILROAD.—*Killing Animals.—Special Finding.—Conclusions.*—In an action against a railroad company to recover for animals killed, an answer by the jury to an interrogatory, that the animals entered upon the defendant's ground at a place where the road was not but *could* have been fenced, is a mere conclusion, and not a special finding upon a particular question of fact within the meaning of the statute.

SAME.—*Fence.—Duty of Company.—Liability.—Negligence.*—Railroad companies are not required to fence their tracks at stations and sidings where either freight or passengers are received and discharged, or across streets or highways, or at other points where public convenience will not permit fences to be erected, and, in the absence of negligence, are not liable for killing animals which wander upon their tracks at such places.

From the Jay Circuit Court.

*D. T. Taylor, W. H. Williamson* and *W. C. Ladd,* for appellant.

*A. A. Chapin* and *W. S. O'Rourke,* for appellee.

NIBLACK, J.—This was an action for damages brought by John W. Bechdolt against the Grand Rapids and Indiana Railroad Company for running over and killing two horses of the alleged aggregate value of three hundred dollars.

The complaint was in three paragraphs. The first charged that the point at which the horses entered upon the railroad track was not securely fenced.

The second repeated the charge that, at the point in question, the railroad was not securely fenced, but was negligently left open and uninclosed; that near the place at which the horses entered upon the track, two strips of fence, one on each side of the road, had been so negligently and improperly erected as to constitute a wedge-shaped chute or *cul de sac,* into which the horses were forced by the defendant's cars and negligently run over and killed, without any fault of the plaintiff.

The third alleged that the defendant did, through the fault, misconduct and negligence of its servants and employees, and without any fault on the part of the plaintiff, run against and over the horses at a point on the railroad known as Collett Station, and did thereby kill and destroy them, and that, also, at the time said horses were killed, the defendant then and there neglected to sound the whistle attached to its locomotive, at a distance of from eighty to one hundred rods from a *public crossing* and station at which said horses were killed; that the killing of the horses was occasioned by such neglect to sound the whistle of the defendant's locomotive.

The defendant answered in two paragraphs, the first in denial and the second averring affirmative matters in defence. A demurrer to the second paragraph being first overruled, issue was joined upon it and the cause was sent to a jury for trial. The jury returned a verdict for the plaintiff, assessing his damages at two hundred and fifty dollars, accompanied with numerous interrogatories submitted to them at the request of the parties, respectively.

Construing the interrogatories submitted to them at the request of the plaintiff in connection with their answers, the jury answered substantially as follows:

*First.* That the horses first entered on the railroad grounds at a point where the road was not fenced, but at which it could have been fenced, and from there wandered to a place where the road could not be fenced, and were there killed.

*Second.* That the plaintiff did not contribute any negligence to the killing of the horses.

*Third.* That the defendant's engineer did not, at a point from eighty to one hundred rods north of the public highway crossing, where the horses were killed, sound the whistle on his engine three times distinctly.

Construing in like manner the interrogatories submitted to them at the defendant's request in connection with the answers returned to them respectively, the jury answered to the effect following:

Bechdolt *v.* The Grand Rapids and Indiana Railroad Company.

*First.* That the horses entered the defendant's right of way, connected with its railroad track, from a public highway which crosses the track at Collett Station.

*Second.* That there was no fence at the place at which the horses entered the railroad grounds.

*Third.* That the defendant did not use the right of way where the horses entered upon it, and south of the highway, for station purposes.

*Fourth.* That the placing of a fence and cattle-guards on the south side of the public highway between that and the railroad grounds south of and adjoining such highway, would have obstructed the free passage of passengers over said railroad grounds where such passengers were received upon and discharged from the defendant's trains.

*Fifth.* That there was a side-track at Collett Station commencing on the east side of the main track, south of the public highway, about five hundred and twenty-five feet, and extending north across said highway to a point about four hundred and ninety-five feet north of the same.

*Sixth.* That at and prior to the time at which the horses were struck and killed, the defendant used the railroad track both north and south of the highway in receiving freight.

*Seventh.* That the placing of cattle-guards on either side of the highway where the side-track crosses it, would have obstructed the free passage of the defendant's employees in the use of such side-track and of the station grounds, and have endangered their lives and limbs.

*Eighth.* That the cattle-guards and fence across the railroad track were at Collett Station, 225 feet south of the highway.

*Ninth.* That the cattle-guards and fence across the railroad north of the highway were 330 feet from the station last named.

*Tenth.* That the horses strayed from the plaintiff's inclosure onto the highway, and then entered upon the railroad track from the highway.

*Eleventh.* That the plaintiff's field from which the horses strayed was at the time inclosed by a sufficient fence.

*Twelfth.* That the horses got out of the plaintiff's field through an inclosure.

*Thirteenth* and *fourteenth.* That the plaintiff knew that one of his horses had two nights before got out of the field over the fence.

*Fifteenth.* That there was no order of the board of commissioners of Jay county permitting horses to run at large.

*Sixteenth.* That the engineer in charge of the locomotive which struck and killed the horses, sounded the whistle of his engine once when he reached the signal-board north of, and as he approached, the highway at the railroad station.

*Seventeenth.* That the engineer also caused the bell of his engine to be rung from the time the whistle was sounded until his engine reached the highway crossing.

*Eighteenth.* That as soon as the engineer observed the horses he sounded the whistle to frighten them from the track.

*Nineteenth, twentieth* and *twenty-first.* That the supervisor of the road was guilty of negligence in failing to cause the railroad to be properly fenced, and that it was his negligence in that respect which caused the death of the horses.

*Twenty-second.* That this failure of the supervisor of the road constituted the only act of negligence which caused the death of the horses.

*Twenty-third.* That the plaintiff, after he placed the horses in the field the night before they were killed, did not examine the fences to see if they were all up and in good condition.

*Twenty-fourth, twenty-fifth* and *twenty-sixth.* That if the plaintiff had made such an examination he would not have discovered any insecure or insufficient places in the fences, but that he might have examined the fences if he had desired to do so ; also, that the horses first entered the defendant's right of way south of the highway and west of the railroad track.

*Twenty-seventh.* That the place at which the horses first entered upon the railroad track was between the cattle-guards at the north and south ends of the side-track, respectively.

*Twenty-eighth.* That it could not be said that the failure of the engineer to sound the whistle of his engine three times distinctly, at from 80 to 100 rods from the highway crossing, caused the injury to the horses complained of.

The defendant moved for judgment in its favor upon the answers to the interrogatories, notwithstanding the general verdict, and its motion was sustained. Final judgment was accordingly awarded in favor of the defendant.

Questions were reserved below, and are renewed here, upon the overruling of the demurrer to the second paragraph of the answer, and upon the rendition of judgment in favor of the defendant, notwithstanding the general verdict.

The point made against the sufficiency of the second paragraph of the answer is, that, while assuming to answer the entire complaint, it only answered certain parts of it, and authorities are cited in support of the claim that an answer obnoxious to such an objection is bad upon demurrer, as it undoubtedly is. Works Practice, section 588. But in what respect the paragraph failed to answer the entire complaint is not stated, and no specification is made of any particular defect in the paragraph. Under such circumstances no question is presented on that pleading, and we must assume that the demurrer to it was rightly overruled. Besides, a casual reading of the paragraph induces the belief that it amounted only to an argumentative denial of the complaint.

As applicable to the answers to the interrogatories, the contention is, that, in the most essential respects, they were inconsistent with each other, and hence did not, as a whole, antagonize the general verdict to the extent of justifying the circuit court in refusing to enter judgment upon it. This contention is especially directed to those answers of the jury which have reference to the place at which the horses entered upon the railroad track. We are unable, nevertheless,

to place the construction contended for upon those answers. The answer to the first interrogatory submitted at the request of the plaintiff was more in the nature of a legal conclusion than the finding of a fact.    It did not either indicate the place, or the kind of place, at which the horses went on the track, further than to state that it was at a point where the track *could* have been fenced, but was not.    This can not well be treated as a special finding upon *a particular question of fact,* within the meaning of our civil code.    There are many places on lines of railroad which, as a physical possibility, *could* be fenced in, but are not because they ought not to be.    It is as to facts, and not as to merely speculative inferences, that a jury may be required to answer.    The answer, therefore, to the interrogatory in question was not materially inconsistent with answers to other interrogatories on the same subject which constituted special findings of particular facts.

It is now the accepted law of this State, that railroad companies are not required to fence their tracks at stations and sidings where either freight or passengers are received and discharged, or across streets or highways, or at other points where public convenience will not permit fences to be erected, and are consequently not liable to pay for animals which may wander upon their tracks at such places and be killed without negligence on the part of such companies.    *Indiana, etc., R. W. Co.* v. *Quick,* 109 Ind. 295, and authorities cited.

Some of the other answers state mere conclusions, and still others are only collateral and incidental to the matters really at issue between the parties; but, taking all the answers which amount to a finding of facts into consideration, the plain inferences are :    First.    That the horses went onto the right of way, and thence upon the track from the highway, at a place at which the track was not, and ought not to have been, fenced.    Secondly.    That the horses afterwards wandered upon the track and were killed without negligence on

Bechdolt v. The Grand Rapids and Indiana Railroad Company.

the railroad company's part. Thirdly. That the engineer in charge of the locomotive which struck and killed the horses caused the whistle to be sounded, as he approached Collett Station, in the manner and at the time as is impliedly required by section 2178, R. S. 1881. These inferences negatived all the material allegations of the complaint, and, hence, defeated the 'plaintiff's asserted right to recover in the action. None of these inferences are in serious conflict with the finding that it was the failure of the supervisor to have the railroad properly fenced which caused the death of the horses. *Pittsburgh, etc., R. R. Co.* v. *Spencer,* 98 Ind. 186; *Pittsburgh, etc., R. R. Co.* v. *Evans,* 53 Pa. St. 250.

That finding was a mere conclusion, not sustained by the facts from which it was presumably drawn. The facts thus referred to tended towards an entirely different conclusion, which was that the place at which the horses entered upon the track was one where the railroad was not, and ought not to have been, fenced in, and hence that the company's failure to fence the track at that place had no wrongful connection with the killing of the horses.

Other questions are discussed, but what we have said must necessarily result in the affirmance of the judgment; we need not, therefore, further extend this opinion.

The judgment is affirmed, with costs.

Filed Feb. 17, 1888.