GEORGE FISHBAUGH, Appellant, v. W. J. SPUNAUGLE, Appellee.

| 118 | 337 |
| 143 | 181 |

Action to Enforce Landlord's Lien: WAIVER: CONSIDERATION.
1  When a landlord gives his consent to the sale of property on which he has a lien for rent and the tenant acting upon such consent makes a sale, the landlord waives his lien, and the consideration for the waiver lies in the fact that the tenant, relying upon the same had bound himself to give the purchasers good title.

Authority of Agent: POWER TO RELEASE LIEN. Evidence that an
2  agent has authority to lease, collect rents, direct repairs, authorize tenant to sell corn to pay taxes and make repairs, and otherwise indicating general authority, is sufficient to support a verdict of general agency, which includes power to release the landlord's lien on at least part of the property.

Special Finding; INCONSISTENCY: GENERAL VERDICT. Where
3  special findings are inconsistent with each other, or where there is apparent inconsistency between some of the special findings and the general verdict, yet if, considering all of the special findings, such inconsistency is not necessarily implied, the general verdict will stand.

Evidence of Other Sales; ADMISSIBILITY. Evidence of other sales
4  than the one in question, made with the agent's consent, as limited by the court's instruction, was proper.

*Appeal from Page District Court.*—HON. O. D. WHEELER, Judge.

WEDNESDAY, OCTOBER 29, 1902.

ACTION to enforce landlord's lien against a purchaser of grain from the tenant of plaintiff. Judgment for defendant, and plaintiff appeals.—*Affirmed.*

VOL. 118 IOWA.—22.

*W. P. Ferguson* for appellant.

*John R. Good* and *H. R. Scott* for appellee.

WEAVER, J.—Plaintiff, by his agent, one Scheibenberger, leased a farm to one Hinsley for the year 1899. Out of the crop of corn raised by him upon the leased premises Hinsley sold a quantity to defendant, who paid him therefor the sum of $246.72. This action is brought by the plaintiff as the owner of the land, alleging that the rent has never been paid by Hinsley, that there is due thereon more than the value of the corn received by defendant, that the corn so purchased was subject to a lien for said rent, and asking judgment against the defendant accordingly. The defendant admits the purchase of the corn and payment of the sum mentioned to the tenant, but says that plaintiff's agent, who had charge of the business, stood by, and saw the tenant disposing of the property which secured the rent and collecting payment therefor, and made no objection thereto, whereby the landlord's lien was waived. He further alleges that the corn for which payment is claimed was sold by the tenant with the knowledge and consent of the plaintiff and his agent, and that the defendant therefore took it free of plaintiff's lien. The cause was tried to a jury, which returned a general verdict for the defendant, with answers to special interrogatories as follows: "First. Do you find, from the evidence, that Scheibenberger had any knowledge that Hinsley, was selling to defendant, Spunaugle, any of the corn covered by the lien of plaintiff, Fishbaugh? Answer. Yes. Second. Do you find that Scheibenberger authorized Hinsley to sell or deliver the corn in controversy to defendant, Spunaugle? Answer. Yes. Third. Do you find that defendant, Spunaugle, was induced to purchase from Hinsley the corn in question by knowledge or information of any act, conduct, or representation on the part of

Scheibenberger?    Answer.    No.    Fourth.    Do you find
that Scheibenberger had authority to waive the lease of
plaintiff on any part of the crop covered by plaintiff's
lien?    Answer.    No."    Plaintiff moved for judgment for
the amount of his claim notwithstanding the general ver-
dict, and also moved for a new trial.    These motions were
denied, and judgment entered on the verdict against
plaintiff for costs.

I.    It may be conceded, as contended by appellant,
that the landlord can enforce his lien against a purchaser
from the tenant without notice.    *Holden v. Cox*, 60 Iowa,
449; *Blake v. Chas. Counselman & Co.*, 95 Iowa, 219;
*Frorer v. Hammer*, 99 Iowa, 48.    But that question does
not seem to be raised in this case.    It is admitted that
defendant purchased knowing the corn had been raised by
a tenant on leased ground, and that he knew the rent was
not paid, or at least not paid in full.    The position of the
defendant is that the lien which the law gave the plain-
tiff was waived or relinquished by the voluntary act of the
plaintiff by his agent, in giving express consent to the sale.

II.    It is next said that a consideration must be shown
to support a waiver, and that there is none in this case.
In the sense in which the general rule is usually quoted,
the doctrine contended for is unquestionably
right.    If, for instance, the property sought
to be subjected to plaintiff's claim had never
been disposed of by the tenant, and suit had been brought
against him to enforce the lien, he could not avoid such
enforcement by proving that plaintiff had waived or relin-
quished his right to such remedy without also showing
some consideration for the waiver.    If, however, the land-
lord gives his consent to the sale of the property by the
tenant, and the latter, acting upon such consent, makes
the sale, the relinquishment becomes effective.    A con-
sideration then exists in the fact that the tenant, upon
faith of such relinquishment, has bound himself to make

1. LANDLORD'S
lien: waiver:
considera-
tion.

a good title to his purchaser. It is elementary that consideration for an undertaking is not necessarily anything which is of advantage or benefit to the party against whom it is asserted, but may consist in something which imposes upon the other a liability or inconvenience which otherwise would not have existed. *Townsley v. Sumrall*, 27 U. S. 170 (7 L. Ed. 386); *Powell v. Brown*, 3 Johns. 100; *Dorwin v. Smith*, 35 Vt. 69; *Violett v. Patton*, 9 U. S. 142 (3 L. Ed. 61.)

III. Considerable attention is given in argument to the proper meaning and definition of "estoppel," and whether any estoppel is shown against the plaintiff. Without going into that discussion, we think it may be said that there is no evidence in this case upon which an estoppel by conduct can be based. But, in so far as a party may be said to be estopped by his own agreement or express undertaking, we think the evidence presents a case for the jury. There is sufficient testimony to justify the finding that plaintiff's agent gave Hinsley permission to sell, and such authority, subject only to the question next discussed, would be a complete defense to plaintiff's action.

IV. It is said, however, that, if the agent, Scheibenberger, did assume to give such consent, it was beyond the scope of his authority, and not binding upon the plaintiff. We think this contention is not sustained by the record. It is true, Scheibenberger swears in a general way that he was not authorized to waive or release plaintiff's lien on any of the property; but it further appears from his own statement that he was transacting plaintiff's business in reference to the farm, renting it, collecting rents, superintending and directing repairs, authorizing the tenant to sell corn for the payment of taxes and purchase of fencing, and in other ways indicating clearly the very general scope of his duties in reference to his employment. This presents a proper case for the consideration of the jury, and a finding that the

2. AUTHORITY of agent: power to release lien.

agency was general is not without support. *Nicholson v. Golden*, 27 Mo. App. 132. To be a "general" agent, or to be clothed with "general" authority, as that word is used in law, means no more than to have general authority in reference to a particular business or employment (Story, Agency, section 17); and certainly, under that definition, the authority exercised by the agent in leasing the land and supervising the farm and tenant appears to have been as broad and general as it could well have been made. He says in his testimony: "I was his [plaintiff's] agent in renting the farm * * * °Was his agent under the lease to control the farm during 1899 and up to the present time. Transacted all business in relation to collection of rent. * * * Did not exceed authority in what I did. * * * Did instruct Hinsley to sell one load of corn to Gwynn, and 200 bushels to Maxwell. * * * I had general supervision of the farm under his [plaintiff's] instructions, and the renting and looking after it. * * * Had no authority to do anything prejudicial to Fishbaugh's interest. Had authority to do anything that was beneficial to him." Under these statements, although he elsewhere states, more as a legal conclusion than otherwise, that he had no authority to waive the lien, the verdict of the jury in this respect cannot be disturbed. It is to be observed, also, that the plaintiff himself does not testify, and in no manner explains or rebuts the apparent authority of his agent. It is very likely true that the plaintiff never told Scheibenberger in so many words that he might waive or release the landlord's lien, but the giving of authority, express or implied to permit the tenant to market the corn, would have that legal effect. It is a settled doctrine that the principal is bound not only by acts of his agent within the express limit of his instructions, but is also bound to the extent of the apparent authority conferred upon such agent; and this is true with reference to special agents as well as general agents. *Howell v. Graff*, 25 Neb. 130 (41

N. W. Rep. 142); 1 Am. & Eng. Enc. Law (2d Ed.) 986-
989. This rule is applicable even against private instruc-
tions limiting the agent's power, where such limitations
are not brought to the notice of the parties with whom the
agent deals. *City of Davenport v. Peoria Marine & Fire
Ins. Co.*, 17 Iowa, 276; *Bryant v. Moore*, 26 Me. 87, (45
Am. Dec. 96); *Hatch v. Taylor*, 10 N. H. 538. The apt-
ness of these rules to the present case is apparent when
we find from the record that the agent did have and exer-
cise the authority to permit the tenant to market at least
200 bushels of the corn raised on the leased premises. This
had the effect to bring the power to release the landlord's
lien (as to part of the property, at least) within the scope
of the agency, and, if the agent allowed the marketing of
a greater number of bushels than his instructions contem-
plated, such act will bind the plaintiff as against the ten-
ant, and the purchaser not having notice of such limitation.
*Murphy v. Ins. Co.* (Tenn.) 27 Am. Rep. 761); *Burner
Co. v. Odlin*, 51 N. H. 56 (12 Am. St. Rep. 45); *Walker v.
Skipwith* (Tenn.) 33 Am. St. Rep. 161; Story, Agency, sec-
tion 443; *Ruggles v. Insurance Co.* (N. Y.) 11 Am. St. Rep.
674, and note (s. c. 21 N. E. 1,000).

V. Perhaps the most important point made by the
appellant is upon the effect to be given to the fourth spec-
ial finding by the jury, which answers in the negative the
3. SPECIAL          question whethe "Scheibenberger had auth-
findings:
general ver-        ority to waive the lease of plaintiff on any
dict: incon-
sistency.          part of the crop covered by plaintiff's lien."
It is said that this is fatal to the general verdict, for, if
the agent had no authority to waive, then Hinsley had no
right to sell, or, if he did sell, the lien would follow the
property into defendant's hands. This argument is plaus-
ible, and not without force, but, in our judgment, should
not prevail. In the first place, the form of the question
submitted to the jury is peculiar, and to some extent mis-
leading, and, giving it its literal meaning, the answer of

the jury is not necessarily inconsistent with the general verdict. The jury, as will be noticed, was asked if the agent had authority "to waive the lease." Authority to waive the lease involves a much broader and more comprehensive discretion than authority to waive the lien, and it is only by considerable violence to the language employed that we may regard one phrase as the equivalent of the other. But treating the expressions as interchangeable, we still think the general verdict may stand. In such case the most which can be said is that the special findings are inconsistent with each other, and such inconsistency is not fatal to the general verdict. *Dickey v. Shirk*, 128 Ind. 278 (27 N. E. Rep. 733); *Chambers v. Butcher*, 82 Ind. 508. "If the answers are conflicting, they neutralize each other." *Keesley v. Ryan*, 84 Ind. 89; *Foster v. Gaffield*, 34 Mich. 356; *Railroad Co. v. Mayne*, 83 Cal. 566 (23 Pac. Rep. 522). And, where a special finding is more in the nature of a conclusion of law than a finding of fact, it may be disregarded by the court. *Beckdolt v. Railroad Co.*, 113 Ind. 343 (15 N. E. Rep. 686;) *Hogan v. Railroad Co.*, 59 Wis. 139 (17 N. W. Rep. 632); *Davis v. Reamer*, 105 Ind. 318 (4 N. E. Rep. 857). In *Tobacco Co. v. Jenison*, 48 Mich. 459 (12 N. W. Rep. 655), a question whether transactions by a partner were within the scope of the partnership business was held to involve more of law than of fact, and not a proper subject of special finding by the jury. See, also, *Dubois v. Campau*, 28 Mich. 304; *Hatfield v. Lockwood*, 18 Iowa, 298. The case of, *Fick v. Railway Co.*, 68 Wis. 469 (32 N. W. Rep. 527, 60 Am. St. Rep. 878), is also in point. There the plaintiff sued for damages for an assault committed upon him by defendant's agent, and it became a material matter to consider whether the assault was made by the agent in the course of his employment. There was a verdict for plaintiff, but in answering several questions submitted to them the jury found, among other answers, that in striking the plaintiff

defendant was not acting in the course of his employment. The court says, "This, in view of the other findings, amounts only to a conclusion of law, and is not controlling as to the fact," and affirmed the judgment against the defendant. This court has held that, although there is an apparent inconsistency between some of the special findings and the general verdict, yet if, upon taking them as a whole, such inconsistency is not necessarily to be implied, the general verdict must stand. *Bills v. City of Ottumwa*, 35 Iowa, 110. The question is not to be determined by singling out some one special finding for ·consideration, but all must be considered together in the light of the pleadings. *Railway Co. v. Heaton*, 137 Ind. 1 (35 N. E. Rep. 687); *Railroad Co. v. Stout*, 53 Ind. 147; *Lamb v. Society*, 20 Iowa, 127; *Phœnix v. Lamb*, 29 Iowa, 355, 356; *Conners v. Railway Co.*, 71 Iowa, 492; *Seekel v. Norman*, 78 Iowa, 254. No mere superficial inconsistency is sufficient to invalidate the verdict. It must be so irreconcilable that both cannot possibly stand. *Pahlman v. Taylor*, 75 Ill. 629; *Railway Co. v. Dunleavy*, 129 Ill. 132 (22 N. E. Rep. 15); *Railroad Co. v. Speer*, 156 Ill. 244 (40 N. E. Rep. 835); *Todd v. Badger*, 134 Ind. 204 (33 N. E. Rep. 963). It has frequently been held, also, that, when a party alleges inconsistency between a special finding and the general verdict, the court will not consider the evidence, but, if the special finding can be reconciled with the general verdict under any proof that might have been made under the issues, the point will be overruled. *Odell v. Brown*, 18 Ind. 288; *Railroad Co. v. McCaffrey*, 62 Ind. 552; *Railway Co. v. Martin*, 82 Ind. 480. It is not necessary for us here to determine whether the rule last referred to prevails in this state as broadly as recognized by the Indiana court. We have at least gone to the extent of saying that, "if there was evidence to sustain the general verdict, it will not be disturbed, though the special finding may not seem to sustain it." *Phœnix v. Lamb, supra.*

The court will not strain a point to discover an inconsistency between the verdict and the finding (*Railway Co. v. Holley*, 30 Kan. 465, 474 (1 Pac. Rep. 130, 554), but, on the contrary, the finding will, if possoible, be so construed as to support the verdict (*Bonham v. Insurance Co.*, 25 Iowa, 328; *Warner v. Association*, 8 Utah, 431 (32 Pac. Rep. 696); *Water Co. v. Richardson*, 72 Cal. 598 (14 Pac. Rep. 379); *Barnes v. Rembarz*, 150 Ill. 192 (37 N. E. Rep. 239), and all reasonable presumptions will be indulged to support the verdict. Applying these rules to the case before us, we think the fourth special finding by the jury is not of such nature as to justify the court in disturbing the general verdict. It was not necessary that the agent should have express authority to release the corn in order to bind the plaintiff, and it is such express authority, we think, in view of the whole record, the jury intended to negative. Indeed, the agent may in fact have had no authority, yet if, under all the circumstances, his consent to the sale of the corn was within the apparent scope of the power given him by the plaintiff, then the latter will be bound by such consent, and the lien will be held to have been relinquished as against the purchaser.

VI. Complaint is made of the admission of testimony offered by the defendant tending to show that other sales of produce from the leased land had been made by the tenant with the agent's knowledge and consent. The use to be made of this testimony was limited by the court's instruction to its bearing upon the matter of dealing with plaintiff's property by the agent, the apparent scope of the agent's authority, and other related features of the case, and, as so limited, there was no error in its admission. The fact, if proved, that the agent was allowing the tenant to sell to others, is a circumstance tending to corroborate the tenant's claim that like consent was given to the sale made to

4. EVIDENCE of other sales: admissibility of.

the defendant. It also has some tendency to show the extent of authority confe red upon him.

T.ie conclusions we have announced make it unnecessary to consider further questions raised in argument. The judgment of the district court is AFFIRMED.