FEDERAL LAND BANK OF OMAHA, Appellant, v. UNION BANK & TRUST COMPANY OF OTTUMWA, Appellee.

No. 45022.

Maʀᴄʜ 5, 1940.

Oᴘɪɴɪᴏɴ Mᴏᴅɪꜰɪᴇᴅ ᴀɴᴅ Rᴇʜᴇᴀʀɪɴɢ Dᴇɴɪᴇᴅ Jᴜɴᴇ 20, 1940.

J. C. Pryor, Don C. Young, F. R. Boyles, Thomas J. Bray, and John R. Morrison, for appellant.

Jones & White and Gilmore, Moon & Bannister, for appellee.

Mɪʟʟᴇʀ, J.—Plaintiff's petition asserts eleven counts; each count is based upon a separate check; nine of the checks are alleged to have been drawn to the order of the plaintiff, wrongfully secured by defendant, the proceeds collected by defendant, and withheld from plaintiff. The other two checks were drawn to the order of the Federal Farm Mortgage Corporation. The eleven checks total $4,429.30. The period, over which it is alleged that the checks were wrongfully collected by defendant, extends from April 29, 1936, to July 13, 1938. An amendment to the petition asserts that all of the checks were endorsed in the name of the payee by one John F. Webber.

The defendant's answer admits certain allegations of the petition and denies others. It asserts that said John F. Webber was employed as attorney for the plaintiff and its assignor, and acted as such attorney in securing all of the checks referred

to in the petition; all of them were secured in connection with foreclosure proceedings handled by Webber, as attorney for plaintiff, being mostly rents paid during continuances granted under moratorium statutes; for several years it had been the custom of Webber, acting as attorney for plaintiff, to collect money due plaintiff, endorse the checks in the name of the plaintiff, by himself as its attorney, collect the same and remit the proceeds, less attorney fees and disbursements, by his own personal check to plaintiff; plaintiff had knowledge of such custom and practice, made no objection thereto, and is estopped to claim that Webber did not have authority to endorse the checks in question as attorney, and receive the proceeds thereof; defendant had knowledge of the custom and practice of Webber, acting as attorney for plaintiff, and relied thereon in cashing the checks so endorsed by Webber; defendant was not notified at any time prior thereto that Webber had no authority to so endorse said checks.

Plaintiff's reply denied that Webber endorsed the checks as attorney for plaintiff, denied the custom alleged by defendant, denied any knowledge of such custom, denied any estoppel and denied that Webber had authority to collect the money or endorse the checks.

A jury was waived and the cause was tried to the court. The court found generally in favor of the defendant, dismissed the petition and entered judgment against the plaintiff for costs. Plaintiff appeals to this court.

Since this is an action at law tried to the court, a jury being waived, the court's decision on disputed questions of fact has the same effect as the verdict of a jury. Findings of fact by the court, under such circumstances, may be set aside only if there was no substantial evidence in the record to sustain such findings. Accordingly, as to the questions of fact herein, it is neither our privilege nor duty to find the facts, but merely to decide from the record what the court was warranted in finding them to be.

Certain facts appear without substantial dispute. John F. Webber was an attorney at law, practicing at Ottumwa. He

was employed, as such attorney, to represent the plaintiff in numerous foreclosure suits brought by him on behalf of plaintiff in Wapello county and various other counties in that vicinity. Each of the checks referred to in the plaintiff's petition was issued for the amount specified, was endorsed by Webber, deposited by him in his account with the defendant bank, collected by defendant and credited to Webber's personal account. Webber failed to remit the proceeds of such checks to plaintiff. All of the checks were secured by Webber in connection with foreclosure suits being handled by him. One of plaintiff's witnesses testified that Webber had no express authority to endorse any check in the name of the plaintiff.

Counsel for defendant concede in their brief and argument that, under section 9483 of the Code, 1935, which is section 23 of the Uniform Negotiable Instruments Law, where a signature is made without authority, it is inoperative unless the party, against whom it is sought to be enforced, is precluded from setting up such want of authority. They also concede that, if Webber's endorsements of the checks were unauthorized, and the plaintiff is not precluded from asserting such want of authority, defendant is liable for the proceeds of the checks to plaintiff. Accordingly, it is not necessary for us to review many of the authorities asserted by plaintiff in support of its appeal herein.

The decisive question is whether or not Webber was in fact authorized to endorse the checks involved herein, or, if not, whether the plaintiff is foreclosed from asserting such want of authority. Counsel for defendant recognize that the burden of proof was upon defendant to establish apparent, ostensible or implied authority in Webber to endorse the checks as the basis for estoppel against the plaintiff to assert lack of such authority on the part of Webber. Before undertaking to review the evidence in detail, upon which defendant relies to sustain such burden, we will briefly refer to certain well known and generally recognized principles of law which seem to be controlling.

Section 9479 of the Code, 1935, provides:

"The signature of any party may be made by a duly authorized agent. No particular form of appointment is necessary for this purpose; and the authority of the agent may be established as in other cases of agency."

Under this section, the authority of Webber to endorse the checks is to be determined from the rules applicable in cases of agency generally.

In the case of Wright v. Iowa Power & Light Co., 223 Iowa 1192, 1196, 274 N. W. 892, 894, we state:

"It is a well established rule that as between a principal and third parties, the principal is bound by the acts of his agent within the limits of the apparent scope of his authority. Palmer & Sons v. Cheney, 35 Iowa 281; Wood v. Chicago, M. & St. P. R. Co., 68 Iowa 491, 27 N. W. 473, 56 Am. Rep. 861; Fishbaugh v. Spunaugle, 118 Iowa 337, 92 N. W. 58; Wisconsin Lumber Co. v. Greene, etc., Tel. Co., 127 Iowa 350, 101 N. W. 742, 69 L. R. A. 968, 109 Am. St. Rep. 387; Boylan v. Workman, 206 Iowa 469, 220 N. W. 49; Tidewater, etc. Railroad Co. v. Harney, 32 Cal. App. 253, 162 Pac. 664; 2 American Jurisprudence, Agency, pages 82, 89."

Again, at page 1199 of 223 Iowa, 274 N. W. at page 896, we state:

"Although a principal may by special limitations restrict the authority of his agent, and although such restrictions are obligatory between the principal and his agent, such limitations are not binding upon third parties, and in the absence of knowledge of such restrictions by them, the principal will be bound to the same extent as though the restrictions were not made. 2 American Jurisprudence, Agency, p. 89, and a large number of cases cited under note 1. See, also, Restatement of the Law on Agency, Sec. 160."

In the case of Boylan v. Workman, 206 Iowa 469, 472, 220 N. W. 49, 50, we state:

"But it is also a well established rule that, as between a

principal and third parties, the principal is bound by acts of the agent within the limits of the apparent authority of the agent. * * *

■ "The American Law Institute (Restatement No. 1), Agency, Section 10, thus states the rule:.

" 'Apparent authority is the result of the manifestation by one person of consent that another shall act as his agent, made to a third person, where such manifestation differs from that made to the purported agent.' "

■ In addition to the sections of the Restatement of the Law of Agency, referred to in the above quotations, two other sections of that work would seem to be important. Section 43-(2) provides: "Acquiescence by the principal in a series of acts by the agent indicates authorization to perform similar acts in the future." Section 94 provides: "An affirmance of an unauthorized transaction may be inferred from a failure to repudiate it." These principles of law have been recognized by this court.

In the case of Bissell v. Spring, 179 Iowa 1005, 1011, 162 N. W. 245, 247, we state:

"That the agency may be established from the conduct and relations of the parties and the surrounding circumstances, without showing express authority, see Grant v. Humerick, 123 Iowa 571 [94 N. W. 510] ; McManus v. Chicago G. W. R. Co., 156 Iowa 359 [136 N. W. 769] ; and Campbell v. Gowans, [35 Utah 268, 100 P. 397] 23 L. R. A. (N. S.) 414 [19 Ann. Cas. 660], supra."

In the case of Johnson v. Northern Minnesota Land Co., 168 Iowa 340, 351, 150 N. W. 596, 600, we state:

"The extent of the authority of an agent is often difficult to define in exact terms, even as between principal and agent. As a practical fact, it is usually to be ascertained by fair implication rather than by exact words used between principal and agent."

In the case of Grant v. Humerick, 123 Iowa 571, 573, 94 N. W. 510, we state :

"That an agency may be implied or presumed from the conduct of the parties, no one will deny; and it is a general rule that where a party has so acted as to reasonably warrant the presumption that another is his agent for general or specific purposes, 'whether it be in a single transaction or in a series of transactions, his authority to act for him in that capacity will be conclusively presumed,' so far as it may be necessary to protect third persons who have acted in good faith and with reasonable prudence. Mechem on Agency, section 84; 1 Am. & Eng. Enc. Law (2d Ed.) 1002. And so where it appears that an alleged agent has performed acts similar to the one in question, which have been ratified by the principal, his authority may be implied. Jewett v. Lawrenceburg R. Co., 10 Ind. 539; Odiorne v. Maxcy, 15 Mass. 39; Wilcox v. Chicago R. Co , 24 Minn. 269. See, also, Cobb & Co. v. Hall, 49 Iowa 366, and Cupples v. Whelan, 61 Mo. 583."

In the case of McCormick Harv. Mach. Co. v. Lambert, 120 Iowa 181, 182, 94 N. W. 497, 498, we state:

"The defendant offered evidence tending to show that said Jones had been handling the plaintiff's machines and extras for several years, and that others had bought machines of him, and had settled with him therefor by giving their notes payable to the plaintiff. This testimony was all stricken out upon the plaintiff's motion, and in so ruling the court erred. All of these matters were competent as tending to prove that Jones was in fact the agent of the plaintiff, and further, they were competent as tending to show a course of dealing from which the agency might be presumed. Mechem on Agency, sections 83-86; Van Werden v. Life Insurance Society, 99 Iowa 621."

█ Webber, as a witness for defendant, testified that he acted as attorney for plaintiff in the handling of foreclosure cases and other incidental legal matters in Wapello county and several neighboring counties from January 1932 until July

1938. He was acting as such attorney in the foreclosure cases which resulted in the issuance of the checks involved in this litigation. In each instance, the check was delivered to Webber, as attorney for plaintiff. He also testified that during the entire period that he acted for plaintiff, when he made collections, as attorney for plaintiff, if the check was issued to the order of plaintiff, he endorsed it in plaintiff's name, deposited it to his personal account, and always made remittance to plaintiff by his own personal check; the first notice he received from plaintiff that he did not have authority to endorse checks in this manner was in May 1938, and the first objection on the part of plaintiff to his remitting by his own personal check occurred in July 1938. A large number of checks were identified and introduced in evidence. From these exhibits it appears that during the period from October 1934 to February 1938 Webber remitted by personal check to plaintiff sums in excess of $6,000 and during the same period of time, endorsed in the name of plaintiff and deposited in his own account, checks in excess of $4,000. The fact that the latter amount is the smaller of the two appears to be due to the difficulty in securing canceled checks as evidence of the transactions. His account was carried with defendant bank. The deposits were made with defendant and the checks transmitted to plaintiff were drawn on defendant.

The evidence above reviewed, considered with the testimony of defendant's cashier, was sufficient to warrant the court finding that defendant bank knew Webber was attorney for the plaintiff, knew of the custom of Webber to endorse checks in the name of plaintiff, deposit them to his own account and remit to plaintiff by personal check on defendant bank, relied upon such custom in accepting checks endorsed by Webber as attorney for plaintiff, believed that Webber had authority to so endorse the checks and was never advised otherwise by plaintiff.

Counsel for plaintiff contend that the evidence is wholly insufficient to warrant the court finding that plaintiff knew of this custom or acquiesced therein. One of the arguments made is that plaintiff may have assumed that the checks were made

payable to Webber and, therefore, the evidence did not justify a finding, from the custom of remitting by his personal check, that plaintiff knew he was endorsing checks in plaintiff's name. We do not think that the evidence is subject to the interpretation contended for by counsel, and some of the evidence is directly opposed thereto.

For example, on September 25, 1935, G. W. Hunter, manager of plaintiff's real-estate department, wrote the clerk of the district court at Sigourney, as follows:

"We note from your report that you show on May 3, 1935 a remittance for $44.42 to this Bank. We have checked our records and do not find any record of this payment. Will you please advise us in regard to this."

On September 28, 1935, the clerk wrote plaintiff, attention Mr. Hunter, as follows:

"In reply to your letter of the 25th instant I wish to say that I have paid the taxes in full and on May 3, 1935, I paid to the Federal Land Bank the balance on hand of $44.42, by Keokuk County State Bank check No. 1074, which check has cleared the bank endorsed on the back 'Federal Land Bank by John F. Webber.' "

On October 4, 1935, T. A. Oldham, of plaintiff's real-estate department, wrote Webber, as follows:

"We have written the Clerk of Court, Mr. Utterback, Sigourney, Iowa and he reports that he forwarded to the Bank $44.42 by Keokuk County State Bank check No. 1074, which check has cleared the bank and is endorsed on the back 'Federal Land Bank by John F. Webber.' If you will kindly send us a check for $44.42, we can complete the 1934 lease record on this farm."

On October 7, 1935, Webber wrote Oldham, as follows:

"When receiver's report was prepared and sent to Mr. Anderson on June 1, I thought the money had been sent along

with that report as the deal was closed as far as the receiver's report was concerned, but I find on checking today that the money was not sent. I am very sorry this occurred and I am inclosing to you herewith my check for $44.42 to complete this record."

On October 15, 1935, Hunter, as manager of plaintiff's real-estate department, wrote Webber:

"We wish to acknowledge your letter of October 7th, enclosing remittance in the amount of $44.42, in connection with the 1933 and 1934 Receivership lease on the above named farm. We have credited this account accordingly."

This evidence shows that plaintiff knew that Webber had endorsed a check in plaintiff's name. It accepted his personal check for the proceeds. This was in the fall of 1935, which was prior to any of the transactions involved in this appeal. Most of the other evidence is more or less circumstantial and not as direct and positive as that above reviewed. Considering all of it, however, we are of the opinion that the evidence warranted the court's finding that plaintiff knew of the custom of Webber to endorse checks in plaintiff's name, secure the proceeds thereof, and remit by his personal check, acquiesced therein, and is bound thereby.

Counsel for plaintiff contend that the defense set forth herein is to be determined by the rules applicable to equitable estoppel, based upon false and fraudulent misrepresentation or concealment, and that defendant failed to meet the requirements of such rules. It is not necessary for us to discuss the elements of the rules contended for by plaintiff because they do not apply herein. In the case of Kimbro v. New York Life Ins. Co., 134 Iowa 84, 93, 108 N. W. 1025, 1028, 12 L. R. A., N. S., 421, we state:

"While the obligation of a principal because of the act of an agent may under some circumstances and in a limited sense be said to rest upon the doctrine of estoppel, it is not true that

the strict rules governing estoppels in general are in all cases controlling upon the effect to be given to an agent's act.''

Again, in the case of Andrew v. Kolsrud, 218 Iowa 15, 19, 253 N. W. 913, 914, we state:

''Counsel fail to distinguish the difference between a case where a claim is made that a certain party was an agent, and the claim that a third party believed, acted and relied upon the conduct of the principal. The latter claim, of course, would be on the theory of an agency by estoppel. The two are distinguishable. An implied agency is an actual agency, and is a fact to be proved by deductions or inferences from other facts.

'' '* * * while in a strict sense agency by estoppel should be restricted to cases in which the authority is not real but apparent.

'' 'As to third persons the principal is equally liable in the case of implied agency and agency by estoppel, although this distinction is to be noted, that agency by estoppel can be invoked only when the third person knew and relied on the conduct of the principal, while in cases of true implied agency he need have had no knowledge of the principal's acts, nor have relied on the same; the agent by implied authority being an actual agent, the principal is liable for his acts the same as though the authority had been express.' 2 C. J. p. 444, sec. 42.''

Appellant urges that the claim of implied, apparent or ostensible authority in Webber was not raised by the pleadings, and, therefore, is not available to defendant. The facts pleaded were sufficient to raise the question. Andrew v. Kolsrud, supra; McCormick Harv. Mach. Co. v. Lambert, supra. Also, appellant's contention that this defense was not properly raised below does not warrant consideration by us because it was presented for the first time in the reply argument. The case appears to have been tried on the theory that the pleadings were sufficient to raise the question. In appellant's opening

brief and argument, in support of the contention that the court erred in finding for the defendant, counsel state: "7. That John F. Webber had no implied authority to endorse said checks. 8. That the defenses of estoppel, or any of them, pleaded by defendant were not established by the evidence." Appellee's brief and argument was prepared on the theory that the issue of implied or apparent authority was properly presented to the court below. The contention now made for the first time by appellant in its reply argument comes too late for our consideration. Cowles v. Joelson, 226 Iowa 1202, 286 N. W. 419, and cases therein cited.

There is one feature in the case that has caused us difficulty. As stated at the outset, two of the checks were drawn to the order of the Federal Farm Mortgage Corporation, and endorsed in its name by Webber. One check was for $122.50 and the other was for $47.62. The amount involved in these two checks is, therefore, a small part of the total amount sued for. This may account for the situation that confronts us. Appellant's abstract sets out the evidence of the defendant in fragmentary form. It clearly indicates that a substantial amount of evidence was introduced in reference to the conduct of Webber, as attorney for the Federal Farm Mortgage Corporation, as well as attorney for plaintiff, and it clearly indicates that there must be some connection between these two corporations. A power of attorney issued to Webber as attorney for the two corporations was introduced in evidence, but is not set out in the abstract. Evidence of the custom of Webber to endorse checks in the name of the Federal Farm Mortgage Corporation is referred to in the abstract, but is not set out in sufficient form for us to know just what the evidence was. In appellant's brief and argument, no distinction is made between the checks endorsed in the name of the plaintiff and those endorsed in the name of the Federal Farm Mortgage Corporation. Appellee filed an amendment to abstract, which includes 172 pages. It sets out fully the evidence in reference to the checks pertaining to plaintiff, but does not amplify the evidence in reference to the checks endorsed in the name of

the Federal Farm Mortgage Corporation. We cannot determine from the record before us whether or not different questions are presented as to these two checks. In view of the nature of the briefs and arguments, we assume that there were none.

Plaintiff objected to all the evidence introduced by defendant to show the custom of Webber to endorse checks in the name of plaintiff and the knowledge of plaintiff and defendant of such custom. The objection was in the nature of a standing objection and the evidence was received subject to the objection. At the close of the evidence, plaintiff made a blanket motion to strike all of such evidence. The motion was overruled. It is plaintiff's theory that none of the evidence was admissible unless it was shown that, as to the particular transaction inquired about, such transaction and such evidence was known to both the plaintiff and the defendant, and, since much of the evidence is not shown to have been known to both, it was not admissible. The difficulty with plaintiff's contention is that counsel seek to apply the rule of estoppel for false and fraudulent representation or concealment to the record herein. As heretofore pointed out, that rule is not applicable. The question before the court was the existence of a custom, knowledge and reliance thereon by defendant, and knowledge and acquiescence therein by plaintiff. The transactions which imparted notice and knowledge to plaintiff did not have to be transactions that were known to defendant. Similarly, transactions which imparted knowledge of the custom to defendant did not need to be transactions that plaintiff knew of. As to many of the transactions, some knowledge was imparted to each. But this was not an indispensable requirement. So considering the evidence, we find no error in the court's ruling on the objection.

The motion to strike appellee's supplemental argument is overruled. The judgment is affirmed.—Affirmed.

HAMILTON, C. J., and SAGER, HALE, BLISS, RICHARDS, and OLIVER, JJ., concur.