CORN EXCHANGE NATIONAL BANK, APPELLANT, V. PETER JANSEN ET AL., APPELLEES.

FILED DECEMBER 16, 1903.   No. 13,252.

1. Contract: VALIDITY. The validity of a contract assailed for illegality is not determined by its formal incidents but by the nature of the transaction and the intent of the parties.

2. ———: ———. A contract, void for illegality in its inception, is not validated by being sued upon in a foreign jurisdiction.

3. Findings: EVIDENCE. From an examination of the record it appears that the evidence sustains the findings and judgment of the trial court.

APPEAL from the district court for Jefferson county: JOHN S. STULL, JUDGE. *Affirmed.*

*Arnott C. Ricketts* and *Lowe A. Ricketts,* for appellant.

*Frank M. Hall* and *John Heasty, contra.*

AMES, C.

In and prior to the year 1893 Peter Jansen was engaged, through the agency of Congdon & Co., commission dealers in Chicago, in gambling in grain options on the board of trade in that city. That the transactions in which he was engaged, the buying and selling of options to be settled at future dates, by ascertainments and adjustments

of differences in market prices, without the delivery of the commodities nominally dealt in, was gambling, within the meaning of that word at the common law, is agreed by counsel and need not be discussed. It is, indeed, contended by counsel for the plaintiff that, at the time the several purchases and sales were made, there was no agreement that grain should not be delivered pursuant to them, and that, in fact, either party to any such transaction was lawfully entitled to such delivery. But we are of opinion that the intent of the parties, as disclosed by a long course of transactions, is more indicative of the real nature of the latter than are the forms observed in effecting their purpose, and that illegal practices are not purged of their vice because of a superficial resemblance to legality.

Moneys required for the prosecution of these undertakings were furnished by Congdon & Co. to Jansen, from time to time, and charged to him upon a pretended book account, upon which he was supposed to be credited with his winnings at the game. It does not appear that he ever owed them any lawful debt, but, at the time mentioned, he had been charged by them on this account with a sum of money largely exceeding the aggregate amount of the securities in dispute in this action. Jansen was the owner and payee of three negotiable promissory notes, secured by as many several mortgages upon lands situate in this state. These notes he indorsed and delivered to Congdon & Co. at Chicago, as partial security for the sums charged against him on this account. Two of the notes became due January 2, 1896, and were returned to Jansen for the purpose of enabling him to procure, in substitution for them and the mortgages, new notes and new mortgages on the same lands. This he did, indorsing the new notes and forwarding them, together with the new mortgages, through the mails to Congdon & Co. These doings were all so evidently parts of a single transaction that it does not seem to us that the suggestion of counsel, that a different principle applies to the new securities from that which governs those for which they were substituted, calls for com-

ment. Subsequently, Jansen acquired the title to all the mortgaged lands; and this suit was begun for the foreclosure of the mortgages. The plaintiff claims to be the *bona fide* holder of the paper, by delivery from Congdon & Co. as collateral security for indebtedness by the latter to it.

The defenses pleaded are two in number: First, that the indorsements are without consideration and void, both at common law and under statutes of the state of Illinois, because of having been made on account of gambling transactions; second, that the paper was acquired by the plaintiff after maturity and with the knowledge of the lack of consideration for the indorsements. The reply consists of a general denial and a plea of estoppel, to the effect that Jansen indorsed and delivered the paper to Congdon & Co. for the express purpose of enabling the latter to pledge it as collateral for their indebtedness to the plaintiff. In our opinion, if the first mentioned defense is valid, the matter pleaded in estoppel is ineffectual as an avoidance of it. The evidence makes it entirely clear that even if the purpose, or one of the purposes, of the transfer was to enable Congdon & Co. to make the specified use of the paper as collateral, still the consideration therefor was the pretended indebtedness upon gambling account, and both at common law and by the statute, it is the consideration of the contract, and not the purpose for which it is intended to be used, that affects its validity.

Jansen lived in this state, and he indorsed the new notes and deposited them in an envelope addressed to Congdon & Co., in a post office here; and counsel for plaintiff therefore claim that the delivery of them was made here, and his indorsements of them, Nebraska contracts. In support of this proposition, they cite authorities to the effect that the depositing in the post office of a postage paid, properly addressed letter, or the delivery of goods to a common carrier, is a delivery to the consignee or to the person named in the address. The correctness of this rule, subject to certain well known exceptions and limita-

tions, is not doubted; but its applicability to the case in hand will not, in our opinion, bear analysis. There are two aspects in which the matter may be viewed. If the old securities were lawfully in the possession of Congdon & Co., they lost neither their possession nor their right of possession by intrusting them to Jansen, as their agent, for the purpose of obtaining renewals or substitutions, and both attached to the new instruments the moment they came into existence. On another branch of the case, and with respect to an alleged similar transaction between the plaintiff and Congdon & Co., counsel contend for this doctrine with forceful and convincing logic. But if, on the other hand, Congdon & Co., on account of the illegality of consideration, never had rightful or lawful possession of the old papers, or if their right was so infirm that it was lost by intrusting the documents to Jansen, then it must be admitted that the return of the new papers, upon the same invalid consideration, created no greater right in them than did the former transaction, which, at most, was that of a mere naked bailee without interest. In that view, it is evident that the only valid contract between the parties was that of bailment, and the relation of bailor and bailee did not come into existence until the articles came into the actual possession of the latter. In such a case the sender would have an undoubted right to stop the documents in transit, or, after their delivery, to demand them of the bailee, and, if refused, recover their possession by replevin. The only defense Congdon & Co. could have offered would have been the indorsement, but the signature on the back of the note is not the contract of indorsement but only evidence of it, and consideration being wanting or illegal, the bailees would have suffered defeat. In either aspect of the case, therefore, the rights of the parties must be ascertained and governed by the laws of Illinois. That under the laws of that state the contract of indorsement was absolutely void, even in the hands of a subsequent *bona fide* transferee for value before due, is settled beyond controversy by the decisions of its own

courts, and of the supreme court of the United States. *Pope v. Hanke,* 155 Ill. 617; *Tenney v. Foote,* 95 Ill. 99; *Pearce v. Foote,* 113 Ill. 228; *Cothran v. Ellis,* 125 Ill. 496; *Soby v. People,* 134 Ill. 66; *Schneider v. Turner,* 130 Ill. 28; *Pearce v. Rice,* 142 U. S. 28, 40; *Bibb v. Allen,* 149 U. S. 481; *Embrey v. Jemison,* 131 U. S. 336; *Clews v. Jamieson,* 96 Fed. 648.

We do not regard the objections of counsel, that to uphold this defense would be to enforce the criminal laws of a sister state, as having any weight. As already said, the signature on the back of the note is not a contract of indorsement, but merely evidence of one. If a contract is void at its inception, it does not acquire validity by a suit in a foreign jurisdiction upon the instrument by which it is evidenced.

It is further objected that the decisions of the Illinois court, not having been regularly introduced in evidence, this court is not bound by them. Granting this to be so, we are satisfied with the interpretation of the statute which that court has given to it, and are willing to adopt it as our own.

The foregoing views suffice for a disposition of the case, but we have looked into the facts as far as, with the limited time at our command, we have been able to do so by the examination of a voluminous bill of exceptions, and concur with the district court in the opinion that the burden of proof, which is upon the plaintiff to establish its *bona fides,* is not satisfied. Its claim of ownership was not made known to the defendant until after the termination of a tedious and expensive litigation in the United States circuit court for this district, of which it must have had knowledge, and in which Congdon & Co. appeared as plaintiffs and owners of the paper; and the testimony of its officers, in this action, lacks that degree of certainty and apparent candor essential to inspire confidence in their innocence as beneficiaries of a transaction surrounded by many suspicious circumstances. On the other hand the testimony on behalf of the defense is wanting in neither of

these particulars, and the findings of the trial judge, who made a thorough and painstaking original investigation, although no longer conclusive, are entitled to respectful consideration, if not to considerable evidential weight, in this court.

The trial court found the issues, both of fact and of law, in favor of the defendant, and dismissed the action. We recommend that the judgment be affirmed.

HASTINGS and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.