[Civ. No. 1531.   Third Appellate District.—December 5, 1916.]

TIDEWATER SOUTHERN RAILWAY COMPANY (a Corporation), Appellant, v. MINNIE S. HARNEY, Respondent.

CORPORATION—SUBSCRIPTION FOR STOCK—AGREEMENT TO REPURCHASE—ENFORCEMENT AGAINST CORPORATION.—An agreement made by a fully organized corporation with a subscriber for certain shares of its stock, that the corporation at any time within ten months from the date of the agreement would take the stock off the subscriber's hands at the purchase price thereof, if the subscriber so desired, is enforceable against the corporation, in the absence of any showing that any later subscriber had been defrauded by his reliance upon said subscription, or that any subsequent creditor had relied thereon in dealing with the corporation.

ID.—ACTION UPON NOTE—CONDITIONAL SALE OF STOCK—PROOF BY PAROL.—In an action brought by the corporation to recover upon such a note, the defendant may show by parol that the stock was purchased pursuant to such an agreement, and that by reason of the fraud of the plaintiff's agent who was authorized to sell the stock such agreement was not indorsed upon the original subscription, but only upon the copy thereof given to the subscriber.

ID.—AUTHORITY OF AGENT OF CORPORATION—CONDITIONAL SALES OF STOCK.—A corporation is not permitted to deny the authority of

its agent to enter into a conditional contract for the sale of stock, where he is ostensibly clothed with unlimited authority to make sales of its stock.

ID.—FRAUD OF AGENT—LIABILITY OF CORPORATION.—A corporation is liable to subscribers for its stock for the fraud of its agent authorized to make sales, in omitting to indorse upon the original subscription that the sale was made upon condition that the corporation would repurchase the stock if the subscriber was dissatisfied therewith.

ID.—RELIANCE UPON REPRESENTATIONS—RIGHT OF SUBSCRIBER.—A subscriber for stock is not chargeable with negligence in failing to discover the omission of the agent and to insist that the agent make the proper indorsement, as he has the right to rely upon the promises and representations of the agent.

APPEAL from a judgment of the Superior Court of San Joaquin County. D. M. Young, Judge.

The facts are stated in the opinion of the court.

Meredith, Landis & Chester, for Appellant.

A. H. Ashley, and G. M. Steele, for Respondent.

BURNETT, J.—On July 25, 1911, respondent subscribed in writing for five hundred shares of the common stock of the Tidewater and Southern Railroad Company, for which she agreed to pay five hundred dollars. At that time the railroad company was actively engaged in soliciting subscriptions for stock. The subscriptions were made out in triplicate. One marked "original" was retained by the company, one marked "duplicate" was given to the subscriber, and the other marked "triplicate" was retained by the agent. At the time of this subscription defendant executed her note for five hundred dollars for said stock. The duplicate subscription, retained by respondent, had written on the back thereof the following:

"July 25–11.

"Ten months from date, if holder of contract wishes, we agree to take said stock off purchasers hands at the purchase price of $1.00 per share—

"TIDE WATER & SOUTHERN R. R. Co.

"By R. U. MOREY,

"Sec. Dept."

This was not written upon the original subscription retained by the company.

On March 11, 1912, the Tidewater and Southern Railroad Company consolidated with the Tidewater and Southern Transit Company, and the plaintiff corporation was thereby organized, succeeding to all the property rights of each. The action was brought upon said promissory note and the defendant attacked the consideration for the note, claiming that the sale was conditional and that by the fraud of plaintiff's agent, the true consideration did not appear upon the "original" subscription. The defense is elaborately set out in the answer, and the findings and judgment were in accordance therewith.

The case in its main features is quite similar to *Tidewater Southern Ry. Co.* v. *Vance*, 31 Cal. App. 503, [160 Pac. 1097], and is substantially covered by that decision. It is held therein, as stated in the syllabus: "An agreement made by a fully organized corporation with a subscriber for certain shares of its capital stock that the subscriber should have the right at any time within ten months to cancel his subscription and to recall his promissory note therefor, is enforceable against the corporation, in the absence of any showing that any later subscriber had been defrauded by his reliance upon said subscription, or that any subsequent creditor had relied upon such subscription in dealing with the corporation." The principles governing the transaction are set forth clearly and succinctly in said opinion written by Mr. Justice Richards, and it may be said that the supreme court denied the petition for a hearing by that court. The following statement in said opinion is applicable here: "The Tidewater and Southern Railroad Company had been fully organized before the respondent's subscription to its stock was made, and it does not appear that there was any later subscriber who could have been defrauded by his reliance upon the respondent's subscription; nor does it appear that there was any subsequent creditor of said corporation, who could or did rely thereon in dealing with said corporation; nor is it shown that there was any secrecy contemplated or connived at by the respondent in the making of the collateral agreement by which he was permitted within ten months thereafter to cancel his subscription by recalling his note; nor that he had any knowledge of the fact that the authorized

agent of the corporation failed to also indorse such agreement upon the original subscription which said agent retained on behalf of the corporation. Whatever secrecy there was in respect to this agreement was imparted entirely by the corporation itself through the act or neglect of its authorized agent; and this being so, and no rights of subsequent subscribers or creditors being involved in the case, it would be a manifest fraud upon the defendant to permit the corporation to take advantage of its own wrong by repudiating its agreement while enforcing the defendant's note, which was evidently given only because of the reservation in said agreement permitting its recall.''

That this collateral agreement was the controlling consideration for the note could properly be shown by parol. (*Muir* v. *Hamilton,* 152 Cal. 636, [93 Pac. 857].) As to the fact itself, respondent was positive in her statements, and she was corroborated by other evidence. She testified that she signed the agreement at her home in the country. ''On the day we signed up Mr. Morey and Mr. Avery came to see us in regard to the subscription agreement. Agents had been to see us on previous days. I don't remember just how many days, but I guess they came for more than one week in regard to this. My brother and sister were present when I signed. We didn't want to take the stock. He [Mr. Morey] said if we would take it he would give us this contract, that we could turn it back in ten months' time if we were not satisfied with it. He said he would give us our note back. I have never had experience whatever in the matter of purchasing stock. I resided on the ranch all my life up until last year. . . . I relied upon his statements. I would not have signed it if I didn't believe in it, . . . if he had not made this representation.'' She testified further that the agent wrote the contract on the back of what she supposed was the original and gave her the duplicate, and said that the same contract would be on all of said applications, that the original would be turned in at the office, and that he would keep the ''triplicate,'' and that she discovered for the first time when she came into court that there was no such writing on the back of the original.

Not only does she thus exhibit the true consideration for the note, but she displays the palpable effort of the agent to defraud her. By failing to indorse said agreement on the

said "original" he thought to hold her to the absolute terms of the promise to pay the money. This feature of the case, though, might probably be eliminated from further attention, as the rights of creditors or other subscribers are not involved. The decision, indeed, may rest upon the proposition that a vital element in the consideration for the note was this promise in effect to return the note and cancel the obligation within ten months if desired by respondent, and the failure of such consideration by reason of the refusal of appellant to comply with such agreement.

Or the transaction may be viewed as presenting this legal aspect: There was an agreement to deliver to respondent a certain number of shares of stock, provided the sum of five hundred dollars was paid in accordance with the terms of the note. Respondent had, however, the option to pay said sum or, within ten months, to cancel said agreement and be relieved from further liability. She exercised said privilege of rescission, and therefore her conditional obligation was terminated. The transaction must be considered, of course, in its entirety, and the effect is the same as though the contract were fully expressed in one instrument. It can make no difference, since no innocent third person is interested, that the promise to pay the money took the form of a promissory note. Nor are we precluded from giving effect to the intention of the parties by reason of the fact that its expression is lacking somewhat in technical form or precision. In fact, whatever deficiency may exist in that respect was caused by the agent of the corporation, who was moved by a sinister purpose to take any advantage of the confidence of respondent, and she should have the benefit of any intendment that may be reasonably indulged.

Two or three other questions raised by appellant are entitled to some consideration.

We are satisfied that appellant should not be permitted to deny the authority of the agent to enter into such conditional contract. The agents were authorized to sell stock; they had the blank subscription book. In the sale of the stock they represented, therefore, the corporation. The purchaser was not warned nor put upon inquiry as to any limitation to the authority of the agent in receiving subscriptions. The purchaser had the right to assume that the salesman was authorized by the corporation to do those legal acts which the nature

of his employment seemed to warrant. The agent, in other words, was ostensibly clothed with unlimited authority, and upon familiar principles appellant should not be heard to disavow and repudiate the contract made by him.

Again, it appears that before the expiration of the ten months, respondent, in company with her brother and sister, called upon Mr. Bearce, the president of the corporation, and demanded the cancellation of their subscriptions. Mr. Bearce's declarations and conduct at that time were indicative of his knowledge of the whole transaction and of his ratification on behalf of the corporation of the terms of the contract made by respondent. He asserted no claim that the corporation had no knowledge of the conditional agreement or that the sales agent had no authority to sell stock on such terms. He did not disavow liability on behalf of the corporation, nor did he manifest any inclination to disregard or repudiate the actual agreement that was made. To the contrary, he declared that he intended to cancel the notes—including those of respondent's brother and sister, which were given on similar conditions. In fact, an entry was made by the auditor in the bills receivable account of the corporation that respondent's note was canceled. This was undoubtedly at the direction of the president, as he said to respondent "he thought the note had been canceled until the time that the railroad commission took hold of it. He said there had been an entry of cancellation made, and he called some one of the young ladies to find out when he had been there and he had canceled it and she told him the date." Mr. Bearce himself testified: "When they came in, oh, I told the defendant that we would cancel the subscription and as far as I was concerned that was my intention to do it. Then when they commenced to come in, we got the attorneys, Meredith, Landis & Chester, and they told us we could not cancel them." And in answer to the question, "Why did you cancel them?" he said: "Because that agreement, as far as I knew, was a *bona fide* agreement."

The authority of the agent and the ratification of his acts by the principal may be shown, of course, by circumstances, and it is fair to assert that a review of the whole situation leads rationally to the conclusion that, in legal contemplation, the act of Morey in the premises was the act of appellant.

Moreover, if we regard the fraudulent feature of the transaction, we reach the same conclusion. It was the duty of the agent to make the proper indorsement on the "original" subscription. If he had done so, the corporation would have had through that channel actual knowledge of the entire contract. But by the fraud of the agent the said indorsement was not made, and as far as respondent is concerned, the case must be viewed then as though said indorsement had been made and acquiesced in by appellant; for the act of the agent under the circumstances is the act of the principal, and the latter must suffer the consequences of the agent's failure to do as he agreed. This particular phase of the case is discussed with great learning by Mr. Justice Lorigan in *Otis Elevator Co.* v. *First Nat. Bank,* 163 Cal. 31, [41 L. R. A. (N. S.) 529, 124 Pac. 704], wherein is an elaborate exposition of the doctrine that "a principal is liable to third persons not only for the negligence of its agents in the transaction of the business of the agency, but likewise for the frauds, torts, or other wrongful acts committed by such agent in and as a part of the transaction of such business." The fraud perpetrated therein by the agent consisted in presenting a check for payment which had been raised to a much larger amount than it originally called for. He was the agent of a depositor, and for a period of several years had been intrusted by his principal with the duty of filling out in his own handwriting the body of checks payable to "cash" or "bearer," and after the same were signed he presented them to and had them cashed at the depository bank. It was held that he was acting within the scope of his employment when he presented the "raised" check. The principle applies, of course, to acts of omission as well as to acts of commission. It was manifestly the duty of the agent herein to file the original of the actual agreement of the parties with the corporation. He was acting directly within the scope of his authority when he secured the contract and filed it with the principal, and his fraudulent omission of a material part of the subscription must be regarded in the same light as would be a fraudulent addition of a material term. The result is that the status of the parties was fixed as though the agent had done his duty, and appellant is deemed to have ratified the conditional contract.

Nor will it do to say that respondent is chargeable with negligence in failing to discover the omission and to insist that the agent make the proper indorsement. She had a right to rely upon his promise and representations. There may be some antiquated authorities requiring a person to assume that everyone with whom he has a business transaction is a rogue and to act accordingly, but the more reasonable theory is that he can act upon the presumption that there exists no intention to cheat or defraud him. The modern generally accepted doctrine is, "that a man may act upon a positive representation of fact, notwithstanding the fact that the means of knowledge were specially open to him. If the representation were of a character to induce action and did induce it, that is enough. It matters not that a person misled may be said, in some loose sense, to have been negligent (in reality, negligence is beside the case where the misrepresentation was calculated to mislead and did mislead); for it is not just that a man who has deceived another should be permitted to say to him, 'You ought not to have believed or trusted me,' or 'You were yourself guilty of negligence.' " (1 Bigelow on Fraud, 523, 524.) And as to subscriptions, the rule is stated in 10 Cyc., page 424 (d) and (f), as follows: "There are common-law authorities to the effect that one who has been drawn by fraudulent representations into making a subscription for stock of a corporation cannot set up the fact that the fraud was practiced upon him and that it induced him to enter into the contract, by way of defense to an action for the subscription, unless he shows that he used due diligence before signing the contract to discover whether or not the representations were true; but the rule of equity is that where there has been a fraudulent misrepresentation or a willful concealment of facts by means of which a person has been induced to enter into a contract to subscribe, in the absence of circumstances tending to excite suspicion in the mind of a reasonable man he may rightfully rely upon the statements to which the other party to the contract or the agent of such other party has deliberately pledged his faith."

Said rule applies here, as there were no circumstances that would excite the suspicion of a reasonable person. It cannot be claimed that plaintiff is in a better position as to the note than would be the original payee. As we have seen, plaintiff became the owner by virtue of the consolidation of the two

corporations. It cannot be said to be an innocent purchaser or indorsee of the note for value. If it may be assumed that plaintiff can be placed in the category of indorsee before maturity, then the rule of the modern authorities will apply that "where fraud or illegality in the inception of the note is shown by the maker, the burden of proof is then cast upon the indorsee to show that he is an innocent holder." (*Jordan* v. *Grover,* 99 Cal. 194, [33 Pac. 889]; *Union Collection Co.* v. *Buckman,* 150 Cal. 159, [119 Am. St. Rep. 164, 11 Ann. Cas. 609, 9 L. R. A. (N. S.) 568, 88 Pac. 708].) There is no such evidence. The inference is rather that plaintiff had knowledge of the consideration for said note at the time it succeeded to its ownership. There is evidence that Mr. Bearce understood the situation when he became president of the new corporation at the time it was formed. His knowledge would be sufficient to charge the corporation with notice.

Nor do we think there is any merit in the contention that respondent should have resorted to an independent action for damages to enforce her claims under the contract. As before indicated, the consideration for the note was involved, and of course that can be set up as a defense to an action on said note. Or if we view the element of fraud to which we have adverted, attention may be directed to the established and permissible procedure as set forth in *Field* v. *Austin,* 131 Cal. 379, 382, [63 Pac. 692], and other cases, recognizing three methods by which a party defrauded may obtain relief as follows: (1) Cancellation or rescission, whereby the defrauded party procures an instrument to be set aside and himself to be restored to his original position; (2) affirmative relief by an action to recover a pecuniary compensation for the injury sustained by the fraud of the defendant where no cancellation is necessary as the basis of such recovery, and (3) defensive relief whereby the fraud is set up by way of defense to defeat an action brought to enforce an apparent obligation or liability.

After an examination of the entire record and such consideration as we could give to the suggestions of counsel, we are persuaded that it would be wrong to interfere with the judgment of the lower court, and it is therefore affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 4, 1917, and the following opinion then rendered thereon:

BURNETT, J.—In view of appellant's petition for rehearing a few words may be added to the former opinion. We may concede the rule concerning parol testimony to be as stated by appellant. It is a mistake, however, to assume that we have added or attempted to add anything to the written agreement of the parties. We have simply held—what must be apparent—that under the circumstances of this case the agreement was in effect to cancel respondent's obligation if she exercised her option within ten months. As to this it may be declared that the contract was so treated and interpreted by respondent and by the president of appellant; it was so represented by the agent and so understood by Miss Harney at the time of its execution, and it cannot be doubted that a cancellation of respondent's obligation by appellant would have been essentially a compliance with the corporation's agreement. This necessarily follows from the fact that the contract was executory, and respondent promised to pay the same amount for the same number of shares of stock as appellant. The stock was never delivered to respondent and she made no payment therefor, but simply gave her promissory note. Suppose appellant had kept its promise; what would have occurred? It would have delivered to respondent the contract and promissory note and whatever was necessary to evidence a satisfaction or cancellation of respondent's obligation. But, according to appellant's theory, to carry out its contract this proceeding would be required; respondent would pay appellant the sum of five hundred dollars and receive the five hundred shares, and then she would immediately return the shares and receive the money again. Such circuity of action would not be required. Its equivalent would be indubitably the cancellation of respondent's obligation and the return of the note. So it seems perfectly plain that the court below, as well as the parties to the action, had a right to construe the agreement as one for the cancellation of respondent's liability. We have not varied nor added to the terms of the agreement, but have sought to give it effect according to its plain meaning and intent.

We think, also, that appellant is mistaken in the suggestion that the main contention of respondent is that ''she was deprived of a most important consideration, in that the collateral agreement was not embodied in the original, and hence she could not take advantage of its provisions.'' That was only one of the series of fraudulent acts perpetrated by the corporation through its agent. However, the fraud is not so important if we accord to respondent the full benefit of the contract that was actually entered into. And we can see no reason why, in an action brought by appellant to recover on the promise of respondent, she may not show a failure of consideration by reason of the refusal of the former to keep the covenant which was the sole inducement for the promise on the part of respondent. Appellant having brought the suit, invited the very defense that was interposed, and made it proper to adjudicate the merits of the whole transaction. In this connection it may be said that the record shows that respondent did exercise her option, and that appellant failed to keep its agreement is not the subject of dispute.

It seems entirely plain that respondent could bring no such independent action for damages as is suggested by appellant. How could she sue for the failure to purchase from her stock which she did not own and never had in her possession? How could she tender the stock, as required, before bringing an action for the purchase price when she had no control of said stock?

But we need not go further than to say that in our judgment appellant has failed to appreciate the situation of the parties and the nature of their contract. It has been treated as though the stock had been delivered by respondent and the money paid for it and she were the moving party in the action. It may be that from a legal standpoint the defense might have been presented more artistically and accurately, but the cause was fairly tried and justly decided, and the conclusion should not be disturbed. The petition is denied.

Chipman, P. J., and Hart, J., concurred.