AMOS BROWN, APPELLEE, V. STROUD & COMPANY, APPELLANT.

FILED MAY 26, 1924.   No. 22721.

Corporations: SALE OF STOCK: AGREEMENT FOR REFUND. Where the fiscal agent of a corporation procures to be executed a stock subscription contract and, as part of the same transaction, executes in the name of the company a written agreement to refund under certain conditions the amount paid for the stock, the cor-

Brown v. Stroud & Co.

poration, if it with notice of such agreement accepts and retains the consideration, is bound thereby, notwithstanding the subscription contract had printed therein a provision that no conditions or agreements other than those printed therein shall be binding upon the company.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*William Baird & Sons,* for appellant.

*Nye, Worlock & Nye* and *N. P. McDonald, contra.*

Heard before MORRISSEY, C. J., LETTON and DAY, JJ., BLACKLEDGE and REDICK, District Judges.

BLACKLEDGE, District Judge.

In this an appeal from the district court for Buffalo county, the plaintiff seeks to recover from the defendant the amount of a note of $5,000 previously given and paid for the purchase of certain of the capital stock in the defendant company. In the original transaction the plaintiff acted in person and the defendant was represented by one J. W. Rachman. The documents executed at the time consisted of one which was apparently in two parts marked by a line of perforation, the upper part being designated "Subscription for capital stock," and the lower part, "Receipt for subscription of the capital stock." They both contained a notation printed thereon that all checks, drafts, money orders or other payments must be made payable to and be received by Stroud & Company, and the subscription part also contained this clause: "No conditions or agreements either verbal or written other than those printed herein shall be binding upon the company." At the time of the transaction the agent, in order to induce the plaintiff to make the subscription and give his note, further made and wrote upon the reverse side of the receipt for subscription the following:

"If the securities of Stroud & Co. do not have a selling price of a minimum of $150 per share by the time of note

for $5,000 due 18 mo. from date the company will take back stock on demand of holder Mr. A. Brown.

"(Signed)    Stroud & Co., J. W. Rachman."

In closing the transaction the plaintiff's note was given and was discounted at the local bank and a certificate of deposit obtained therefor maturing in 18 months, the same time as the note. Plaintiff paid the note, and shortly after the maturity thereof, upon the basis of the contract above quoted, made demand for the refund of the purchase price of the capital stock. The defendant failing to comply therewith, the present suit resulted. Judgment was given in the district court in plaintiff's favor.

In this appeal it is of the assignments of error by the appellant that the contract is lacking in mutuality, and too vague and uncertain to support a decree; also that, by plaintiff's delay of three months from the maturity date in demanding redemption of the stock, he waived his right thereto. We do not consider these propositions of sufficiently serious import to warrant a reversal, especially as it is disclosed by the evidence that the parties understood the terms of the contract, and there was no attempt at the trial to show that, under any possible construction, the requirements of the contract as to the value of securities had been met, nor that any change in or injury to the defendant's situation had resulted from the delay.

A more serious question is raised upon the assignment that the contract to repurchase or redeem the stock was not that of the defendant, was made without authority or ratification, that defendant is protected against the same by the clause of the subscription contract hereinbefore quoted and, hence, that the evidence is not sufficient to sustain the decree of the trial court.

In this, the appellant relies strongly upon the case of *Schuster v. North American Hotel Co.*, 106 Neb. 672, 679, wherein this court held that, where a contract contains the provision that no conditions, agreements or representations other than those printed in the instrument shall bind the company, the agents of the company who sell the

Brown v. Stroud & Co.

corporate stock and procure the execution of the subscription contract clearly act outside the limits of their ostensible authority when they make an oral promise, as an additional stipulation and obligation of the company, that the company will, upon request, accept a return of the stock and repay the consideration, with interest. That case, we do not doubt, correctly states the law as applied to the facts in it. But, as we understand the record in the present case, the principles expressed in the *Schuster* case would have to be considerably broadened in scope before they could be made to govern in the instant case. In the opinion by Justice Flansburg on rehearing it is said:

"It is quite generally held that a provision in a contract, to the effect that the agent cannot bind the company by any representations, statements or agreements, will not relieve the principal from responsibility for the fraudulent representations, as to the subject-matter of the contract, made by the agent, since such representations are within the scope of the agent's actual or ostensible authority. It is a self-evident fact that, in order that an agent sell corporate stock for a company, he must make representations to the buyer as to the character of the business of the company, the amount of its earnings, its financial condition and assets, and many other representations of fact which materially affect the value or desirability of the stock. * * * Where he makes false representations concerning the subject-matter of the contract, as distinguished at least from the agreements and promises which are to be undertaken, the company is responsible."

It is also to be noted that the court had then under consideration no express written contract purporting on its face to be that of the company, but an oral promise of the agent that he would procure the contract of the company, which fact itself was notice of the lack of authority of the agent to make the contract sought to be relied upon. We are cited to no case wherein it was considered that such a provision would be sufficient to avoid responsibility on the part of the company in instances where it had notice of

the agreement made by the agent and accepted and retained the proceeds of his transaction. In this case the trial court expressly finds that the defendant had full knowledge of the contract made in its name by Rachman at the time of the sale of the stock and fully ratified said contract.

The case then turns upon the construction to be put upon the evidence and the findings of the trial court. We have carefully considered all the evidence as contained in the record. It discloses that the person making the contract on behalf of the defendant was its fiscal agent. He was a son of the then president of the company. His testimony as given is not contradicted in the record except as to the single fact of the giving of notice of this contract to Mr. Jones, the treasurer and a director of defendant company. He received the plaintiff's note in the transaction, payable to the defendant, and discounted it at a local bank, thereby incurring a liability of the defendant as indorser. He obtained the proceeds of the note in the form of a time certificate of deposit, also payable to defendant company, which he turned over to the treasurer and director, receiving his commission at the time and deducting the discount to the bank therefrom, and at the same time, as he says, informed the treasurer and director of the outstanding contract, which is the basis of this suit. As stated, it is only upon this point as to the information given concerning the outstanding contract that this witness is contradicted. He later, before the maturity of the contract, became a director and stockholder in defendant company himself and so continued for several months. He states that he made the contract on the basis of an informal meeting and conversation with the officers of the company which included the president, secretary, treasurer, and himself. It is not clearly disclosed how many officers and directors there were, but the only other mentioned is the vice-president.

Upon the part of the defendant the treasurer is the only one who explicitly denies information concerning this contract. The secretary testified as a witness and his answers are not explicit. He was asked upon being shown this con-

tract: "I will ask you if you received or saw any copy of that anywhere near the time when, around July, 1919, or were advised by any one of the contents thereof, or that such an instrument had been executed?" To which he answered: "No, sir; I did not." Again he was asked: "Did the board of directors ever at any meeting pass any resolution authorizing the making of a contract such as the plaintiff claims was made on the reverse side of plaintiff's exhibit 1?" To which he answered: "No, sir." These questions and the answers constitute the sum of the secretary's testimony in reference to knowledge of the contract and as to what the records did or did not disclose. The president of the company, whom the articles of incorporation provide shall sign or countersign all certificates, contracts and other instruments of the company, was not produced or interrogated as a witness, and no showing was made that he was not available. These witnesses testify in person and, upon the whole state of the record, we think it was such a case as was particularly within the better opportunity for the trial court for observation and determination.

We are not, however, in accord with the proposition urged by the appellee to the effect that this court will not disturb the findings and decree of the lower court unless the same are clearly wrong and not supported by competent evidence, in support of which a large number of cases are cited. Subsequent to the determination of all the cases so cited there was enacted chapter 125, Laws 1903, now appearing as section 9150, Comp. St. 1922, to the effect that in appeals of this character it is the duty of this court to retry the issues of fact upon the evidence preserved in the bill of exceptions, and upon trial *de novo* to reach an independent conclusion. The construction placed upon this statute is illustrated by the following cases: *Faulkner v. Simms,* 68 Neb. 299; *Corn Exchange Nat. Bank v. Jansen,* 70 Neb. 579; *Shafer v. Beatrice State Bank,* 99 Neb. 317; *State v. Leflang,* 108 Neb. 138; *Miksch v. Tassler,* 108 Neb. 208.

We believe that in this state of the record—"The find-ings of the trial judge, who made a thorough and painstaking original investigation, although no longer conclusive, are entitled to respectful consideration, if not to considerable evidential weight, in this court." *Corn Exchange Nat. Bank v. Jansen*, 70 Neb. 579. We think that this rule is applicable to the case at bar, and under it we cannot conscientiously say that there was any error in the findings of the trial court. The judgment is therefore

AFFIRMED.

Note—See Corporations, 14 C. J. p. 580, sec. 860.