LAWRENCE WRIGHT et al., Appellees, v. IOWA POWER & LIGHT COMPANY, Appellant.

No. 43911.

SEPTEMBER 21, 1937.

REHEARING DENIED JANUARY 14, 1938.

Bradshaw, Fowler, Proctor & Fairgrave, for appellant.

John Connolly, Jr., and Irvin Schlesinger, for appellees.

KINTZINGER, J.—The record shows that at various times between January 17, 1929, and September 23, 1930, the defendant, through its agent, C. E. Bauman, sold plaintiffs 26 shares of its preferred six per cent stock in the Iowa Power & Light Company at $100 per share. The record also shows without dispute that said Bauman was an agent of the defendant company, duly authorized to sell its stock. Every time he sold any of said stock to plaintiffs, he agreed with them that the investment was perfectly safe and that the company would repurchase the stock at any time they desired, and that they could get their money back within ten days or two weeks after it was requested, less $2.00 per share on all stock turned in within one year, $1.00 per share on all stock turned in within two years, and without any charge thereafter. The record shows that the stock in question belonged to the Iowa Power & Light Company, and that it was, therefore, selling its own stock.

The evidence shows without dispute that on November 2, 1933, the plaintiffs tendered a return of all stock purchased by them to the appellant company at its office in Des Moines for repurchase in accordance with the agreement made by defendant's agent, Bauman. The appellant positively declined and refused to repurchase said stock upon the alleged ground that the agreement for its repurchase was made without any authority of the company and that its agents had no power or authority to make any such agreement.

At the close of the evidence, defendant made a motion for a directed verdict chiefly upon the ground that its agents had no authority to enter into such repurchase agreement. This motion was overruled and a verdict for the full amount sued for was returned by the jury. Defendant then filed a motion for a new trial upon the same ground, which was also overruled. Judgment was then entered on the verdict and defendant appeals.

The record in this case shows, and appellant concedes that the only proposition raised on this appeal is that the "record in this case did not justify the trial court in submitting to the jury the question of the authority, actual or apparent, of the appellant's agents to bind it to the contracts declared upon."

Appellees are husband and wife, aged 74 and 76 years, respectively, residing at Des Moines. Mr. Wright was engaged in repairing violins. The record shows that appellees, as a result of newspaper articles advertising the sale of the Iowa Power &

Light Company's six per cent preferred stock as a safe investment, made inquiries at the company's office in Des Moines regarding such preferred stock. They were advised that one of its men would be sent out to see them. The following day, one C. E. Bauman called at their home, stating that he was sent there by the company.

The record shows that both Mr. and Mrs. Wright asked Mr. Bauman if they could get their money back when they wanted it if they purchased the stock, and Mr. Bauman told them they could. At Mr. Wright's suggestion for further assurance about the repurchase of the stock, Mr. Bauman brought a letter to the Wrights from the Iowa Power & Light Company, signed by F. R. Spaulding, its Investment Representative. This letter was addressed to appellee and said:

"Mr. Bauman has asked us to write you in regard to the market we are maintaining for our stock.

"We have maintained this market ever since the stock was issued and expect to do so indefinitely, making a charge of $2.00 per share for the resale of stock held less than a year. During the second year the stock is held the charge is $1.00 per share and after that there is no charge.

"The wide distribution of our stock together with the values which does not fluctuate, makes it possible for us to do this. * * *

"[Signed] F. R. Spaulding,
"Investment Representative."

The letter was written on one of the company's official letterheads, showing names of its general officers, among which was printed that of F. R. Spaulding, as INVESTMENT REPRESENTATIVE.

Appellees purchased 26 shares through appellant's agent, C. E. Bauman, who had been sent to the Wrights by appellant to effect the sale. The Wrights paid Mr. Bauman $2,600 in cash for the stock, and the money was turned over to the Iowa Power & Light Company by its agent.

The defendant offered no evidence whatever, but in its answer alleged that neither its investment representative, Spaulding, nor its agent, Bauman, had any authority to enter into the contract for the repurchase of said stock.

The record shows that the reasonable value of the stock at the time it was tendered for repurchase was only $47 per share.

Plaintiffs being in need of funds were compelled to sell their stock at $47 per share, and now ask judgment for $53 per share, with interest, as damages for a breach of the contract.

Appellant contends that the evidence fails to show that either Spaulding, the investment representative, or its agent, Bauman, who sold the stock, had any *actual* or *apparent* authority to enter into an agreement for the repurchase of the stock in question.

The record shows without dispute that F. R. Spaulding was the investment representative and had general supervision of the sale of all stock of the appellant company. It also shows without dispute that C. E. Bauman was an agent for the company authorized to sell its stock, and that he did sell 26 shares of stock to appellees at par, and that all of the money received therefrom was turned over to and received by the defendant company.

The lower court submitted to the jury the question of Bauman's apparent authority to enter into the repurchase agreement made with appellees. So the question for determination here is whether or not the evidence was insufficient as a matter of law to take that question to the jury.

The instructions of the court placed the burden of proof upon plaintiffs to show that appellant's agents were acting within the scope of their *apparent* authority in making the repurchase agreement.

It is conceded that an agent may bind his principal by an act within the limits of the apparent scope of his authority; it is also conceded that *apparent* authority is not actual authority, but is such authority as the principal holds the agent out to the public as possessing.

■■■ The rule is stated in 2 Corpus Juris, 564, as follows:

"Where the third person has ascertained the general character or scope of the agency, he is authorized to rely upon the agent having such powers as naturally and properly belong to such character, and, in the absence of circumstances putting him upon inquiry, is not bound to inquire for secret qualifications or limitations to the apparent powers of the agent."

■■■ "Where the nature and extent of an authority * * * are to be determined * * *, or to be implied from the facts and circumstances, the questions as to the nature and extent of the

agent's authority and whether the particular act in controversy was within the scope of his authority are usually questions of fact for the jury, guided by proper instructions from the court, and in such cases it is error to take the question from them by nonsuit, instruction, or direction of verdict." 2 Corpus Juris, 962, Sec. 733.

 A corporation must, and does necessarily act through an agent or representative. This rule is so elementary that it needs no citation of authority in support thereof. However, see Johnson v. Land & Inv. Co., 168 Iowa 340, 150 N. W. 596.

It is a well established rule that as between a principal and third parties, the principal is bound by the acts of his agent within the limits of the apparent scope of his authority. Palmer & Sons v. Cheney, 35 Iowa 281; Wood v. Chicago, M. & St. P. R. Co., 68 Iowa 491, 27 N. W. 473, 56 Am. Rep. 861; Fishbaugh v. Spunaugle, 118 Iowa 337, 92 N. W. 58; Wisconsin Lumber Co. v. Greene, etc., Tel. Co., 127 Iowa 350, 101 N. W. 742, 69 L. R. A. 968, 109 Am. St. Rep. 387; Boylan v. Workman, 206 Iowa 469, 220 N. W. 49; Tidewater, etc. Railroad Co. v. Harney, 32 Cal. App. 253, 162 Pac. 664; 2 American Jurisprudence, Agency, pages 82, 89.

In Johnson v. Land & Inv. Co., 168 Iowa 340, loc. cit. 351, 150 N. W. 596, 600, the court said:

"Inasmuch as Carrier was concededly the agent of the appellant for some purpose and to some extent, Loper had a right in good faith to rely, within reasonable limits, upon his apparent authority. The appellant, as a corporation, was necessarily represented by some agent in each transaction. Carrier was its only representative present in this transaction."

In Wood v. Railway Co., 68 Iowa 491, loc. cit. 497, 27 N. W. 473, 476, 56 Am. Rep. 861, this court said:

"It was also warranted in submitting the question whether he was held out by defendant as authorized to make such contract. He was the only representative of the company at that station. * * * By placing him in charge of its business at that station, and empowering him to contract * * *, it held him out as possessing the authority to contract with reference to all the necessary and ordinary details of the business."

In Fishbaugh v. Spunaugle, 118 Iowa 337, loc. cit. 341, 92 N. W. 58, 60, this court said:

"It is to be observed, also, that the plaintiff himself does not testify, and in no manner explains or rebuts the apparent authority of his agent. * * * It is a settled doctrine that the principal is bound not only by acts of his agent within the express limit of his instructions, but is also bound to the extent of the apparent authority conferred upon such agent; * * * This rule is applicable even against private instructions limiting the agent's power, where such limitations are not brought to the notice of the parties with whom the agent deals. [Citing cases.]"

Of similar import is Boylan v. Workman, 206 Iowa 469, loc. cit. 474, 220 N. W. 49.

██ The specific point in question is whether or not the principal is bound by an agreement made by his agent to repurchase stock sold by the agent to a third person.

The cases pro and con on this subject are collected in an annotation found in 31 A. L. R. 607, in which the annotator says:

"While it is difficult to generalize on this subject, it may be said that in the great majority of cases the purchaser obtained relief."

In Wisconsin Lumber Co. v. Greene, etc. Tel. Co., 127 Iowa 350, loc. cit. 355, 101 N. W. 742, 743, 69 L. R. A. 968, 109 Am. St. Rep. 387, this court held that a contract to repurchase stock was good. In that case we said:

"* * * it clearly appears * * * that these officers did in fact make the contracts as alleged in the petition, under the seal of the corporation, and that the defendant corporation has had and enjoyed the benefits of such contracts. This being true, the corporation cannot accept and ratify the contracts in so far as they were beneficial to it, and repudiate them in so far as they imposed any liability on its part. *It accepted plaintiff's money on the strength of these contracts, and cannot, while retaining the same, be heard to say that its officers had no authority to make the contracts under which it was received.* This is hornbook law * * *. The contract being under the seal of the cor-

poration, and the signature of the corporation and its officers being undenied, it will, of course, be presumed not only that the contract was in fact executed, but that its officers had power to make it." (Italics ours.)

Upon a somewhat similar question, the Court of Appeals of California in Tidewater, etc. Railroad Co. v. Harney, 32 Cal. App. 253, 162 Pac. 664, 667, says:

"The agents were authorized to sell stock; they had the blank subscription book. In the sale of the stock they represented, therefore, the corporation. The purchaser was not warned nor put upon inquiry as to any limitation to the authority of the agent in receiving subscriptions. The purchaser had the right to assume that the salesman was authorized by the corporation to do those legal acts which the nature of his employment seemed to warrant. The agent, in other words, was ostensibly clothed with unlimited authority, and upon familiar principles appellant should not be heard to disavow and repudiate the contract made by him. * * * The authority of the agent and the ratification of his acts by the principal may be shown, of course, by circumstances, and it is fair to assert that a review of the whole situation leads rationally to the conclusion that, in legal contemplation, the act of Morey in the premises was the act of appellant."

Of similar import are the following cases: Sweeney v. United Underwriters Co., 29 S. D. 576, 137 N. W. 379; Swartz v. Burr, 43 Cal. App. 442, 185 Pac. 411; Dickinson v. Zubiate Co., 11 Cal. App. 656, 106 Pac. 123; California Credit, etc. Corp. v. Brandlin, 75 Cal. App. 609, 243 Pac. 41; Malcomson v. Monaton Realty Co., 214 N. Y. 677, 108 N. E. 1100; Dennette v. Boston Securities Co., 206 Mass. 401, 92 N. E. 498; Lemmon v. East Palestine Rubber Co., 260 Pa. 28, 103 Atl. 510; Brown v. Stroud, 112 Neb. 210, 199 N. W. 33.

In Sweeney v. United Underwriters Co., 29 S. D. 576, 137 N. W. 379, 380, that court said:

"There was evidence tending to prove that the secretary and manager indorsed the contract as made by the sales agent, including the condition for rescinding; and it must be presumed that such secretary and manager had authority to enter into such a contract as the one in question, providing the defendant

could have entered into same. If, as a matter of fact, such an officer as one who is known as secretary and manager had not authority to enter into a conditional stock sale, other than as such authority might be affected by statute, certainly the burden was upon defendant to establish such fact."

In Swartz v. Burr, 43 Cal. App. 442, 185 Pac. 411, 413, the contract provided for a repurchase of shares of stock, and the court therein said:

"If the agreement for the sale of the stock to plaintiff can be considered executory, and its consummation dependent on the condition precedent that at the expiration of one year plaintiff elects to retain it, then the corporation which has received the money and the note, with knowledge of the contract, holds them subject to the exercise of plaintiff's option, and must repay the money, and cannot collect the note, but must surrender it for cancellation in the event plaintiff decides not to retain the stock. *It cannot accept the benefits and repudiate the obligations.*" (Italics ours.)

Although a principal may by special limitations restrict the authority of his agent, and although such restrictions are obligatory between the principal and his agent, such limitations are not binding upon third parties, and in the absence of knowledge of such restrictions by them, the principal will be bound to the same extent as though the restrictions were not made. 2 American Jurisprudence, Agency, p. 89, and a large number of cases cited under note 1. See, also, Restatement of the Law on Agency, Sec. 160.

"The liability of the principal for the acts and contracts of his agent is not limited to such acts and contracts of the agent as are *expressly* authorized, necessarily implied from express authority, or otherwise actually conferred by implication from the acts and conduct of the principal. All such acts and contracts of the agent *as are within the apparent scope of the authority conferred on him, although no actual authority to do such acts or to make such contracts has been conferred, are also binding upon the principal.*" 2 American Jurisprudence, Agency, p. 82. (Italics ours.)

While some cases hold that an agent authorized merely to

sell personal property does not have the power to bind his principal by an agreement to repurchase the property, it is generally held "however, *in most cases arising upon such an agreement to repurchase* made by the agent, the courts, in order to conform with the justice of the situation, have granted relief to the purchaser on the theory that the principal, by accepting the purchase money or the proceeds of the sale, ratifies the agreement of the agent." 2 American Jurisprudence, Agency, 101, Sec. 123. (Italics ours.)

In the recent case of Calvert v. Mason City L. & Inv. Co., 219 Iowa 963, 259 N. W. 452, this court, in an opinion written by Justice Mitchell, held that the corporation was bound by a repurchase agreement made by its president, although the question of authority to make a repurchase agreement was not discussed.

Was the evidence in this case sufficient to submit the question of appellant's agents' apparent authority to the jury? The record shows that appellees, a man and wife, who had already passed their allotted years of life, being desirous of investing their funds in safe securities, saw an article advertising "safe" investments in a newspaper advertising the sale of Iowa Power & Light Company six per cent preferred stock. In answer to this advertisement, they inquired at the general office of the company at Des Moines about such preferred six per cent stock as a safe investment for some of their available cash. They were told at the general office of the company that one of its agents would be sent out to see them. On the following day Mr. Bauman, one of the company's agents, called at their home. In their conversation with him on that day, they asked him if they could get their money back at any time they wanted it if they purchased the stock. Mr. Bauman answered that they could and told them that the company would redeem the stock at a cost of $2.00 per share in the first year, $1.00 per share the second year, and after that there would be no charge for the redemption of the stock.

Mr. Wright told Mr. Bauman that he wanted further assurance from the company. Bauman secured a statement in the form of a letter to the Wrights and took it to their home. This letter, hereinabove set out, was addressed to Mr. Lawrence Wright, and in it he was told that the company "have maintained this market ever since the stock was issued and expect to

do so indefinitely, making a charge of $2.00 per share for the resale of stock held less than a year. During the second year the stock is held the charge is $1.00 per share and after that there is no charge. The wide distribution of our stock together with the values which does not fluctuate, makes it possible for us to do this."

The circumstantial evidence offered in this case tending to show that Mr. Bauman was held out by the company with having the apparent authority to make the agreement of repurchase entered into by him consisted of (1) newspaper articles advertising the preferred stock of the Iowa Power & Light Company as a safe investment; (2) the statement of an employee of the company when Mr. Wright answered this advertisement that the company would send a man out to his home for the purpose of selling the stock; (3) the positive representations of Mr. Bauman that if the Wrights purchased this stock, the company would repurchase it at a slight discount; (4) the letter of the Investment Representative, one of the principal officers of the company, assuring Mr. Wright that this stock had always been resold upon the terms represented by its agent, Bauman, and (5) the fact that the letter contained no statement whatever denying that Mr. Bauman had any authority to make the repurchase agreement entered into by him. To these old people this letter confirmed the statements made to them by Bauman. They understood this letter to mean that their stock would be repurchased by the company and at a resale charge of $2.00 per share during the first year, $1.00 per share the second year, and no charge thereafter. This letter contained no statement that Bauman had no authority to make an agreement to repurchase the stock sold.

Under this evidence these old people may well have been lulled into the belief that Bauman, as the Power & Light Company's agent, was acting within the apparent scope of his authority when he made the repurchase agreement with them. The company, through its agent, sold them 26 shares of its preferred stock; it received and enjoyed the benefits of the sale made by its agent; and should, therefore, not be permitted to repudiate its obligations.

Appellant did not introduce a word of testimony which might in any manner offset the foregoing conclusion. *It did not attempt to show that its agents had no power to enter into the*

*contract.* Having entered into the agreement and having received appellees' money therefor, upon condition that it would repurchase the stock, it will not do to hold as a matter of law that its agents had no apparent authority to enter into the agreement. The receipt of the cash for its stock sold upon the agreement to repurchase is a sufficient ratification of the sale.

While some cases cited by appellant hold that a repurchase contract entered into by an agent is not binding upon the company unless authority for such acts is clearly shown by the evidence, it is our conclusion from the facts in this case that the question of whether or not Bauman was acting within the apparent scope of his authority at the time of receiving plaintiffs' money for the stock sold on the repurchase agreement was for the jury.

For the reasons hereinabove set out, it is our conclusion that the action of the lower court in submitting this question to the jury was correct. The judgment is, therefore, hereby affirmed.— Affirmed.

HAMILTON, C. J., and all Justices concur.